Disney *v.* Coal Creek Mining and Manufacturing Co.

SAMUEL DISNEY *et al. v.* COAL CREEK MINING AND MANUFACTURING COMPANY.

1. EJECTMENT. *Grant. Boundaries.* In fixing the boundaries of granted land, in the absence of marked lines and corners, where the line runs up a creek, a locative call of a branch running into the creek will control the call for distance, and the jury may find that the line ended at the branch, although the call for distance would carry the corners beyond that point.

2. SAME. *Same. Plat and survey.* Where, in an ejectment suit, the rights of the parties turned upon the length of the line of one of the calls of the defendant's grant, and the defendant in his plea expressly recited and claimed that the line was forty poles by the survey and seventy poles by the grant to the corner designated, and the plat and survey in which the grant was issued were introduced in evidence without objection, it was not error for the trial judge to charge that, in the absence of satisfactory proof of marked lines and corners, and where there are doubts in regard to the boundaries arising from the calls of the grant, the plat and certificate of survey might be referred to in explanation of the grant, and as evidence of the locality of the land granted; and the charge is probably correct in all cases where there are doubts in regard to the boundaries arising from the calls of the grant when applied to the ground, and the natural and artificial monuments.

FROM ANDERSON.

Appeal in error from the Circuit Court of Anderson county. W. B. STALEY, Ch., presiding by interchange.

HENDERSON & JOUROLMON and T. J. WEBB for Disney.

ANDRÊWS & THORNBURG for Company.

COOPER, J., delivered the opinion of the court.

Action of ejectment brought by the Coal Creek Company against Disney and others, in which the verdict· and judgment were in favor of the company, and the defendants appealed in error.

The defendants put in a plea disclaiming title to any of the land sued for except several small tracts .set out by metes and .bounds. There was no contest as to any of these tracts except one, it being conceded that the defendants had the better title to all the ·others. The tract in controversy is known as the Bowling land, and the contest was over a strip ·of land on the western boundary of the tract. The land lies in the cove of the mountain, between two forks of Coal Creek, the boundary lines forming an irregular angle down the valley, the disputed line being straight, and constituting the hypothenuse of the triangle. The plea of the defendants described the land as beginning on a white oak, ·thence south 50 degrees east 13 poles to a sweet gum, thence north 62 degrees east 13 poles to a beech at the spring, and so on, giving sixteen calls, with the courses, distances, and a tree or trees at the terminus of each call, until they reached the corner from which the disputed line was run. The difficulty grows out of .the thirteenth call and the call of the disputed line.

The plea sets out the first of these thus: "Thence north 13 degrees west 40 poles by the survey, and 70 poles by the grant, to a sourwood near the branch." It describes the disputed line as: "Thence south 22 degrees west 247 poles by the survey, and 277 poles by the grant, to a black oak." If the 13th call end at 40 poles, then, for the purposes of the present decision, the location of the disputed line as found by the jury is correct. If the 13th call is extended 70 poles, then the beginning corner of the disputed line will be carried higher up the mountain. And the latter line will necessarily bring within the triangle a larger extent of territory. The grant to this land issued to Bowling by the State calls for 100 acres. The line found by the jury includes more than the number of acres called for by the grant. If the line be run, as claimed by the defendants, with the calls of the grant, the quantity of land included would be 100 acres.

The grant to Bowling shows on its face that it was based upon a particular entry, and the land "surveyed the 14th day of March, 1828." The survey was introduced in evidence by the plaintiff, without any objection on the part of the defendant, and shows that the 13th call is but 40 poles as set out in the plea, and the call of the disputed line for 247 poles. All of the other calls of the survey and grant correspond in every other respect. Each call, as we have seen, gives course and distance, and designates a particular kind of tree as its terminus. But the land has been cleared up beyond the begin-

ning corner of the disputed line as found by the sur-
vey, and the trees cannot now, in many instances, be
found.  But the disputed line as run by the grant
commences and runs mainly through the woods, with-
out showing any trees marked either as corner or line
trees.    The same is true of the line as found by the
jury.    The plaintiff contended in the court below for
still another line running principally through cleared
land, but this contention is, of course, not before us,
the plaintiff having acquiesced in the verdict and judg-
ment.

The proof shows that the trees called for in the
grant, wherever still standing, are marked as corner
trees.    For example, the beach at the spring of the
second call, and the sweet gum of the next call, are
found marked.  The 13th call is 40 poles by the
survey, or 70 poles by the grant "to a sourwood
near the branch."    The distance of 40 poles "stops
right on the bank of a small branch" that runs into
Coal Creek on the east, "at its mouth on a little
poor knoll,' say the witnesses, where a sourwood tree
would be likely to grow.    Another branch runs into
the creek from the west immediately opposite.    The
point is therefore one likely to be noted in a survey.
The line at 70 poles would end in the creek bottom
a few poles from the creek, rich land in which the
sourwood tree does not often grow.    The remaining
lines, if run from this point, would strike the woods,
but there are no marked trees, such as are designated
by the calls.    If run from the branch, the lines run
out into the cleared fields, and there are no trees,

and no marked tree near, unless it be a large white oak five poles from where the 15th line gives out, which one of the surveyors thought was marked, he alone having examined it.

The law presumes an actual survey where a grant issues, and on trial in ejectment the grant is conclusive evidence of the fact: *Garner* v. *Norris*, 1 Yer., 62. In ascertaining boundary the rule is to find the lines and corners, or such as have been made; and if there are no monuments, then to take the course and distance called for: *McNairy* v. *Hightower*, 2 Tenn., 302. To establish boundary it is not indispensably necessary that some corner or marked line should be proven to exist. If it be proven to have existed, it is sufficient: *White* v. *Hembree*, 1 Tenn., 534. The safe rule is to compare the calls with the artificial and natural marks on the ground: *Payton* v. *Dixon*, Peck, 148. If a boundary called for can be ascertained, distance must yield, and we must stop at the boundary: *Bowman* v. *Cox*, Peck, 364. General or directory calls yield to locative calls, and calls for course and distance are locative, but not as determinedly so as calls for natural or artificial objects. When such objects are called for as special and locative, not merely general or directory, then they control course and distance: *Simms* v. *Baker*, Cooke, 146; *Whiteside* v. *Singleton*, Meigs, 207. Nevertheless a line run according to course and distance may control a call for natural objects, though called for as limiting objects, if such line was actually traced by the compass, and actually marked and fixed

by the surveyor as the boundary, and so proved in the trial: *Massengill* v. *Broyles*, 4 Hum., 205. In the nature of things, corners are subject to decay, or to be lost in the lapse of years. When some are lost, they are to be sought for by means of the natural boundaries, lines or corners which still remain, and we must take a lost corner to be where it is proved to have been by these data, although the place thus ascertained may not agree with the course and distance from the remaining or standing corners. *Hickman* v. *Tait,* Cooke, 460. So that course and distance are to be resorted to as means of ascertaining boundary when others fail: *Frazier* v. *Bassett,* 1 Tenn., 297. And parol evidence is admissible to prove the actual marking of a line by the surveyor at the execution of the deed or grant different from the line called for: *Dallum* v. *Breckinridge*, Cooke, 154; *Dyer* v. *Yates*, 1 Cold., 136. An actual survey is evidence of the land granted, although the calls of the grant do not cover a part, or, it seems, any part of the land: *Nolen* v. *Wilson*, 5 Sneed, 337.

In view of these principles of law, it is clear that the jury were well warranted in finding as a fact that the lines of the Bowling land were actually surveyed and marked at the time the grant was issued, at any rate up to the beginning corner of the disputed line, especially as the defendant's plea expressly admits a survey. And as the locative call for the branch would control the call for distance, they might also find that the 13th call ended at the branch, and this whether the call was for 40 or 70

poles. There is not only evidence to support such a finding, but there is literally no evidence to the contrary.

It is contended, however, that the charge of his Honor, the trial judge, is erroneous in regard to the effect of the plat and certificate of survey as evidence. His Honor said: "That neither entry nor survey is necessary to the validity of a grant. If the grant itself contain such calls as will enable the grantee by reasonable construction to fix it to a certain piece of ground, that is sufficient. But when there has been a survey, and there are discordant calls in a grant, or doubts with regard to boundaries arising from the calls of the grant, the plat and certificate are admissible to show the intention of the State as to locality. Or, in other words, in the absence of satisfactory proof of marked lines and corners, the plat and certificate of survey are evidence of the locality of the grant. The plat and certificate are to be referred to in explanation of the grant, and to fix its true position but not to destroy it."

When the consideration of the question of boundary first came before the courts of North Carolina, it was with difficulty that the courts could bring themselves to depart from the calls of the grant under the rule of evidence that parol proof should not be received to add to or detract from a written instrument, and the law to this day is, if the grant be intelligible on its face, (when the calls are applied to the surface of the ground or to the marked lines and monuments of boundary), it must not be departed

from. But many mistakes having intervened in making surveys, plats and certificates, and filling up the calls in grants, it was at length permitted to show mistake by proof: *Bishop* v. *Arnold*, Peck, 366. The court of errors of this State at an early day declined to decide whether a plat annexed to the grant, as the law then required, was an essential part of it: *Reid* v. *Dodson*, 1 Tenn., 402. The Federal courts, however, held that it was not, and if recurred to, it must be for the purpose of explanation, and not to destroy the validity of the grant: *Polk* v. *Hill*, 2 Tenn., 153. Those courts also held that the plat and certificate of survey might be referred to, to remove any doubt as to boundary which may arise out of the description in the grant: *Dallum* v. *Breckinridge*, Cooke, 152. And ought to be produced to show upon what entry the grant issued: *Patton* v. *Carothers*, Cooke, 148. And this court has held that they were admissible in evidence as to locality, when there were discordant calls in the face of the grant, that is calls which appear discordant when applied to the ground as marked lines: *Childress* v. *Holland*, 3 Hayw., 274; *Roberts* v. *Cunningham*, M. & Y., 67; *Bell* v. *Hickman*, 6 Hum., 398. So of, an entry: *Smith* v. *Buchanan*, 2 Tenn., 305. And in the absence of proof of an actual survey and marked lines, the plat and certificate are evidence of the land actually surveyed: *Tate* v. *Gray*, 1 Swan, 73. A marked boundary will control the plat (*Mayes* v. *Lafferty*, 1 Head, 60), and the grant itself: *Dyer* v. *Yates*, 1 Cold., 136.

The charge of his Honor, the trial judge, was undoubtedly correct under the facts of this case, where the plat and survey·were necessarily made evidence by the defendant's plea, and introduced without objection. And we are inclined to think it correct in all cases, in the absence of satisfactory proof of marked lines, where there are doubts in regard to the boundaries arising from the calls of the grant when applied to the surface of the ground, and the natural or artificial monuments. They are records, although no longer required to be attached to the grant.

The defendants having failed as to part of the land claimed by their plea, were properly charged with costs.

The report of the Referees will be confirmed, and the judgment below affirmed.