Sneed, J.,
delivered the opinion of the Court.
The complainant, who is a married woman, brings her bill to recover the possession of a tract of land of seventy-two acres, lying in Gibson county, and to have an account of rents and profits. She inherited the land from her father, and alleges that in the year 1847, being then a minor, and the wife of the defendant J. M. Dodd, as she now is, she joined her said husband in the sale of the said land to the defendants Elder, to whom a deed in fee simple was executed by her said husband and herself; and that her said *603 vendees bave sold and conveyed tbe said land to tbe defendant JBentbal, wbo is now in possession; that several children bave been born of ber said marriage; that sbe bas never received any portion of tbe purchase money for said land, and that tbe sale thereof having been made while sbe was an infant, is not binding upon ber. Tbe specific relief sbe asks is, “ that said conveyance be set aside, and that sbe be put in possession of tbe land, and bave a decree for rents, and for general relief.” Tbe defendant demurred to tbe bill, and tbe chancellor sustained tbe demurrer and dismissed tbe bill. Tbe complainant appealed.
Tbe grounds of demurrer are: 1. That tbe complainant is not entitled to tbe possession of tbe land or tbe rents and profits thereof during tbe lifetime of tbe defendant ber husband, he having sold and conveyed tbe same after bis marriage with complainant. 2. That it appears from tbe face of the bill that defendants bave been in adverse possession of tbe land for more than twenty years, and bave thereby acquired a title to tbe land. 3. That it appears upon tbe face of tbe bill that defendants bave bad adverse possession of tbe land for more than seven years prior to tbe bringing of this suit, and, therefore, bave acquired a right to possession during tbe lifetime of complainant and ber said husband by the statute of limitations.
Tbe deed executed by tbe complainant and tbe defendant ber husband, is not exhibited in tbe *604 bill, nor are we advised as to the particular form of its execution, or authentication otherwise than by the general allegation of the bill that “in the year 1847, she, the complainant, then being a minor under the age of twenty-one years, and a married woman, as she now is, joined in a conveyance with her husband, of said land to Elder & Bro., composed of Benjamin Elder and John "W. Elder, absolutely and in fee, who took possession of the same, and they have sold the same to Label Benthal, who is now in possession. That she had married the defendant Dodd, and was his wife at the time of said conveyance, and is still his wife, and that she owned the land in her own right, having inherited the same from her father’s estate.” ¥e are to assume, therefore, that the deed was executed and authenticated for registration in proper form, and in the manner prescribed by our statutes for the conveyance of land by married women, to obviate and remove the disability of coverture.
At the time of the execution of the deed in question, and prior to the act of 1850, c. 86, the husband having acquired by the marriage an interest in the lands of his wife during their joint lives, which might, perhaps, ripen into an estate for life in himself, might sell and convey his said interest, with or without the consent of the wife. The act of 1850, c. 36, however, abrogated this ancient common law right in the husband; and for the purpose of protecting the wife in the *605 possession of lier estate, forbids the sale of tbe husband’s interest during ber lifetime, “without her joining in the conveyance in the manner prescribed by existing laws, in 'which femes covert shall convey lands.” The fee in the wife’s lands never could be conveyed in this State or in the State of North Carolina, even while it was a colony of England, otherwise than by the privy examination of the wife. The primitive mode was by an acknowledgment by the husband and wife before the Chief Justice, “or in the court of the precinct where the land lieth” — the wife having been privately examined before the Chief Justice or one of the Associate Justices.' The old English ceremonial for the conveyance of lands by fine and recovery was never used in the colony of North Carolina, as it seems from the preamble to the act of 1715, c. 28: Vide Barfield v. Combs, 4 Dev., 516. "Without reference; therefore, to the mode and manner of this conveyance, so far as it was executed by the wife,’ and assuming that it was irregular and void as to her, by reason of the coverture, the husband had, nevertheless, the right to sell and convey his interest in the land,' and such a sale and conveyance would vest in the purchaser, at all events, the right of possession during the coverture, which, in the event of his survivorship, with issue born of the marriage, would ripen into an estate in the purchaser for and during his life. And this result during the coverture would be the necessary incident from the marital *606 right which attached . by the marriage and the joint seizen of the freehold, whether he should become tenant by the courtesy initiate by the birth of issue or not. Nor is this right in the husband affected by any disability of the wife at the time of the conveyance. This being so, it results that the complainant cannot recover the possession of the land during the coverture; nor has she any right to demand the rents and profits thereof during that relation.
But the question recurs, to what relief is the complainant entitled under this bill ? She was an infant at the time of the execution of this conveyance, and the deed of an infant, though not void, is, nevertheless, voidable within a reasonable time after the disability of infancy is removed. What is a reasonable time is undefined and indefinable. How long a reasonable time ought to be, said Littleton, is not defined in the law, but depends upon the sound discretion of the court: Co. Litt., 50. It is left to be fixed by circumstances, by the condition and relation of the parties, or by the usages of the trade or business in reference to which the question arises. The complainant was a feme covert also at the time of the conveyance, but the two disabilities cannot be connected so as to give strength to each other in rendering void or voidable the mere fac-tum of the deed of the complainant. Let it be conceded that the disability of coverture, so far as it could invalidate the deed of the complainant, *607 was perfectly obviated by ber execution of tbe instrument under tbe solemn forms of law, notwithstanding ber infancy at ' tbe time; yet tbe fact of ber coverture, in another sense, has an important bearing upon ber rights in this controversy. Tbe deed was executed in 1847, more than twenty years before tbe filing of this bill. We are to suppose that tbe complainant, being of a marriageable age' then, must have attained ber majority many years before this • bill was filed. ' If, then, tbe avoidance, of ber deed on account of ber infancy depends upon ber disaffirmance of it within a reasonable time after such disability is removed, she would, in a court of equity, all other questions, aside, be held to have slept too long upon ber rights, and by ber laches to have lost them. But she is not yet discovert — that disability yet remains. She is supposed to be sub potestate viri while tbe coverture lasts, and tbe law gives her a reasonable' time after that disability is removed within which to assert ber rights. Thus, says Sir William Blackstone, woman is so great a favorite of tbe laws of England, that even tbe disabilities which tbe wife lies under are intended, for tbe most part for ber benefit and protection. 1 Bl. Com., 366. So tbe complainant being both an infant and a feme covert at tbe time of tbe execution of tbe deed in question, no act of affirámnce or disaffirmance in pais on' ber part during tbe coverture could be’binding upon her;, nor can any ratification be predicated upon ber *608 neglect to disaffirm tibe deed in a reasonable time after sbe becomes of age. Tbe purchasers took a title according to the terms of the deed, but subject to be avoided at the election of the complainant within a reasonable time after she became' discovert: Vide Scott v. Buchanan, 11 Hum., 468; Gillespie v. Worford, 2 Col., 682; McCorry v. King, 3 Hum., 267; Coleman v. Satterfield, 2 Head, 259. We hold that the complainant is entitled to the reversion in fee in the land in controversy upon the termination of the life estate, and the facts setCforth in- her bill constitute a cloud upon her said title, which' she has a right to invoke the aid of a court of chancery in having removed, even though she be not entitled to the present possession of the land: 2 Head, 259. The law gave her an election either to abide her discoverture and disaffirm the deed within a reasonable time, or to come into a court of equity and disaffirm it pending the coverture, and, have her rights in the land vindicated, and declared.
But it is said the bill is inartificial, and' cannot be maintained as a bill to remove a cloud, because no such relief is asked. While the rules of pleading in a court of equity are more flexible and liberal than in a court of law, yet it is generally true that a court of equity can grant no relief unless such relief be within the purview and spirit of the equities set forth in the bill. Bút a court of equity regards not mere forms, but looks to the substance of things; and if the *609 facts appear upon tbe face of tbe bill, that entitle tbe party to a specific relief, tbe court will grant such relief, although • tbe forms of speech adopted in the bill be not technically the most appropriate, and although the form of prayer does not in totidem verbis embrace the specific relief to which the facts stated entitles the complainant. The cardinal rule is, that the bill must not be so vague that the defendant may be surprised by a case that he could not be prepared to meet: Mitf. Pl., 46; Hatcher v. Hatcher, 1 McMullan’s Eq., 317; Bank of the U. S. v. Beverly, 1 Howard R., 151. Even if the complainant should mistake the relief to which he is entitled, yet if his equities be clear upon the facts, if he have a •prayer for general relief, the court will so mould its decrees as to give him the specific relief to which the facts entitle him. And it is held, that a prayer for general relief, without a special prayer of the particular relief to which the complainant thinks himself entitled, is sufficient, and that the particular relief which the case requires may at the hearing be prayed at the bar. But this relief must be agreeable to the case made by the bill, and not different from it: Vide Hobson v. McArthur, 16 Pet., 182; English v. Foxall, 2 Pet., 595; Mitf. Pl., 41; Smith v. Delaware Falls Co., 3 Green’s Ch. Rep., N. J., 510; Wilkin v. Wilkin, 1 Johns. Ch. R., 111; Bailey v. Burton, 8 Wend. R., 339. But the court will not grant relief which is without the scope of the complainant’s bill, and not *610 prayed for specifically: Withers v. Thompson, 3 Mon., 333, and see Jarmon’s case, 3 Mon., 119; Sto. Eq. Pl., §§ 28, 40, 41; Bartee v. Tompkins, 4 Sneed, 625.
With these principles applied to the facts set forth in the complainant’s bill, there can be no question that, though not entitled to the present possession of the land, or an account for the rents and profits, she is, nevertheless, entitled to have a decree stating and declaring her rights in the reversion after the falling in of the particular estate that now stands in her way, and removing the cloud which has been thrown upon her title by the facts stated in the bill, if said averments of the bill be true.
The decree of the chancellor is, therefore, reversed, and the cause will be remanded for further proceedings.