HOLSTON NATIONAL BANK *v.* A. H. WOOD.

(*Knoxville.*    September Term, 1911.)

1. **COLLATERAL SECURITIES. Pledgee is not guilty of conversion by his unauthorized purchase at their sale, so long as he retains possession with power to return them to pledgeor, upon proper tender and request.**

The pledgee of bonds and stocks as collateral security for the payment of indebtedness due him is not guilty of a conversion thereof by his unauthorized purchase of the same at a sale made after default, so long as he retains possession and control, with power to return the collateral to the pledgeor, upon payment of the indebtedness so secured, and has not refused to return the same upon a proper tender of the indebtedness, and request for the return of the collateral. (*Post, pp.* 12-14.)

Cases cited and approved: Ball v. Stanley, 5 Yerg., 199; Upchurch v. Darnell, 3 Sneed, 444; Scruggs v. Lester, 1 Heisk., 150; Bank v. Smith, 110 Tenn., 337; Terry v. Bank, 93 Ala., 599; Winchester v. Joslyn, 31 Colo., 220; Bryan v. Baldwin, 52 N. Y., 232; Bank v. Rush, 85 Fed., 539; Glidden v. Bank, 53 Ohio St., 588.

2. **SAME. Same. Pledgee's purchase without express authority may be treated by pledgeor as valid or null; but not as a conversion, when.**

In the absence of express authority, the rule is that a pledgee, upon sale after default, cannot become the purchaser of the property pledged to secure him; and where the pledgee, without authority, becomes the purchaser of securities hypothecated with him, the pledgeor can either treat the sale as valid and hold the pledgee liable for the amount bid by him, or the pledgeor can treat the sale as a nullity; but he cannot treat such sale as a conversion, and hold the pledgee liable for some alleged valuation of the collateral, so long as the pledgee retains the

Bank v. Wood.

possession thereof and does not refuse to return it after proper tender of the amount of his debt.   (*Post, p.* 14.)

See citations under the preceding headnote.   ·

3. **SAME.   Power of sale and right to purchase agreed to be extended to subsequent collateral does not so extend to subsequent collateral under written agreement containing no such power and right.**

Where collateral security is pledged for the payment of a promissory note, by a printed agreement contained in or annexed to the note, with power of sale after default, and right to purchase the same at such sale, vested in the holder of the note, with a further printed provision that "in case of any exchange or addition to said collateral, we agree that the above agreements and provisions shall extend to such new or additional collateral," this provision was intended to apply to collateral deposited by the maker of the note, unaccompanied by any other written agreement, and does not apply to collaterals subsequently pledged under a definite written agreement, containing no such power of sale and no such right to purchase.   (*Post, pp.* 10, 14-16.)

4. **SAME.   Same.   Contract authorizing property pledged for particular debt to be held for general indebtedness is valid, but will be construed in favor of pledgeor, especially if on a printed form furnished by pledgee.**

The provision in a note authorizing the payee bank to hold, as security for general indebtedness, property pledged for a particular debt, is valid, but the rule is that such agreement will not be construed so as to extend the obligation beyond that intended by the pledgeor; and, if such agreement is on a printed form furnished by the bank and signed by its customer, and any doubt arises as to its proper interpretation, it will be construed in favor of the customer.   (*Post, p.* 16.)

Cases cited and approved:   Bank v. Brown (Tenn. Chy. App.), 53 S. W., 206; Harris v. Bank, 77 Md., 423; Hathaway v. Bank, 131 Mass., 14; Gillet v. Bank, 160 N. Y., 549.

Bank v. Wood.

5. **BILLS AND NOTES.** Stipulation for attorneys' fees is valid, and will be enforced to extent reasonable.

While a stipulation in a promissory note for attorneys' fees is valid, and will be enforced, still the court is not bound by a provision to the effect that any particular amount shall be allowed for such fees, and no matter what stipulations as to the amount is made, it will not be enforced unless it appears to the court to be reasonable. (*Post, pp.* 10, 16, 17.)

6. **ATTORNEYS' FEES.** Discretion in allowing attorneys' fees will not be revised except for injustice.

The supreme court is not disposed to interfere with the allowance of attorneys' fees in the lower court, unless it can see that some injustice has been done; for such matters are largely within the discretion of the court, and the supreme court will not interfere with the exercise of that discretion unless the allowance made is thought to be materially wrong. (*Post, p.* 17.)

7 **CHANCERY PLEADING AND PRACTICE.** Relief may be granted complainant under general prayer, upon facts appearing in bill and cross bill, to settle rights and end controversy.

Where the bill does not specifically pray for the relief granted by the chancellor to the complainant, but the decree is warranted by the facts appearing from the bill and the cross bill, and by the prayer for general relief, and such decree settling the rights of all the parties and ending the controversy, or putting an end to the litigation between the parties, will be affirmed by the supreme court. (*Post, pp.* 17, 18.)

FROM KNOX.

Appeal from the Chancery Court of Knox County.—WILL D. WRIGHT, Chancellor.

WEBB & BAKER, for complainant.

JOUROLMON, WELCKER & SMITH, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

The facts of this case necessary to be stated are these:

A. H. Wood was bound to the Holston National Bank upon three notes as indorser or joint maker, and in 1907, addressed to the bank the following letter:

"Knoxville, Tenn.,
"Sept. 17, 1907.

"Holston National Bank,
    "Knoxville, Tenn.
"Gentlemen:

"I herewith inclose you certificates, Nos. 10, 11, 12 and 19, of the Tennessee Iron Ore Company, aggregating 175 shares of its capital stock:

"Certificate No. 10 being for 50 shares;

"Certificate No. 11 being for 50 shares;

"Certificate No. 12 being for 48 shares;

"Certificate No. 19 being for 27 shares.

"Also one certificate No. B-11 for 250 shares of the Big Brushy Coal & Coke Company, of the par value of $100 each.

"I send you these certificates to be held  by  you  as additional collateral security for three notes for which I am responsible as indorser, which you now hold, to wit:

"Two notes of the Big Brushy Coal & Coke Company, one dated November the 27th, 1906, and the other dated August 30th, 1906, each for $10,000, made by the Big Brushy Coal & Coke Company, and indorsed by me, A.

H. Wood; and one note of the Harriman Knitting Mills Company for $15,000, dated August 8th, 1907, and indorsed by me, A. H. Wood.

"The two notes of the Big Brushy Coal & Coke Company are past due, and it is understood by me in putting up this collateral for further protection to these notes, that the bank does not extend to me further time on these notes and does not agree to do so.

"As to the note of the Harriman Knitting Mills, the stock here inclosed is intended as collateral security for the present note, or any renewal thereof.

"Yours very truly,

"A. H. Wood."

The note of the Harriman Knitting Mills, referred to above, was executed by the Knitting Mills and A. H. Wood jointly. It was upon one of the bank's printed collateral forms, authorizing the bank upon default to sell said collateral at public or private sale and to become the purchaser of said collateral at such a sale. The note also contained two provisions material in this suit, as follows:

1st. "In case of any exchange or addition to said collateral, we agree that the above agreements and provisions shall extend to such new or additional collateral."

2nd. "If this note is placed in the hands of an attorney at law for collection, we agree to pay 10 per cent attorneys' fees, and all expenses incurred in its collection; and that if it is sued on, said attorneys' fees and expenses shall be taxed up in judgment."

This note of the Harriman Knitting Mills was renewed several times after the deposit with the bank of the additional collateral referred to in the agreement of Mr. Wood quoted above. The original note of the Harriman Knitting Mills mentioned in its face, as collateral deposited to secure its payment, only the $15,000 of bonds of the Harriman Knitting Mills. The renewals of this note were drawn in the same way, and in none of them was any reference made to the stock of the Tennessee Iron Ore Company, or the stock of the Big Brushy Coal & Coke Company deposited with the agreement heretofore referred to.

After several renewals of this note, no payment having been made thereon, the bank advertised for sale all said stock and also the bonds of the Harriman Knitting Mills Company. It appears that this sale was enjoined by proceedings in the chancery court, but, upon appeal to this court, the injunction was modified so as to restrain only the sale of the stock of the Big Brushy Coal & Coke Company, and the bank was allowed to proceed with the sale of the Tennessee Iron Ore Company stock and of the the bonds of the Harriman Knitting Mills Company.

Other advertisement was made and at public sale the bank became the purchaser of both stock and bonds, bidding in the bonds for $4,000 and the Iron Ore Company stock for $2,500. It credited the $15,000 note with $6,500. the amount of its bid less expense of advertising, and has brought this suit against Mr. Wood to recover the balance due on the $15,000 note, together with 10 per

cent attorneys fees. The attorneys' fees amount, it claims, to $1,588.50, that being ten per cent of the face of the note, with some interest added.

An answer to this bill was filed by the defendant below and subsequently a cross bill. The substance of these pleadings by defendant was that the bank had no authority to sell and bid in the stock and bonds as it had done, or at least to bid in the stock, and it was charged that the bank was guilty of a conversion with reference to the stock, which it was claimed was worth about $17,000. A decree was therefore sought against the bank by this cross bill for the value of the stock. It was also maintained by the defendant below that in any event the attorneys' fees claimed by the bank were unreasonable and should not be allowed.

Considerable proof was taken in the case, and, upon the hearing, the chancellor was of opinion that the bank was entitled to sell the bonds of the Harriman Knitting Company and to purchase same itself, but that it was not authorized to become the purchaser of the stock of the Tennessee Iron Ore Company. He was further of opinion that the bank was entitled to 10 per cent attorneys' fees only upon the balance due on the note, and not to 10 per cent attorneys' fees on the whole amount. Inasmuch as the bank was still in possession of the stock of the Tennessee Iron Ore Company and had a right to subject it to the payment of the balance due on the note, the chancellor directed that said stock be sold and the proceeds of the sale credited upon the note; and that after

such credit was duly made the bank be given a decree against the defendant for the remainder due upon the note and for some $1,300 attorneys' fees.

From this decree the bank has prayed and obtained an appeal to this court in so far as it held that it was not entitled to become the purchaser of the stock of the Tennessee Iron Ore Company at the sale; and from the chancellor's allowance as to attorneys' fees.

In disposing of this case, we may first observe that there was no conversion of this stock by the bank, regardless of whether it was entitled to become the purchaser of said stock at the sale or not.

The bank is still in the possession of the stock and it is still within the power of the bank to return this stock to Mr. Wood, the pledgeor, upon payment by him of the balance of the indebtedness for which it was pledged. It does not appear that any tender of this balance has ever been made, and there has been no refusal on the part of the bank to return the stock to Mr. Wood after a proper tender of the balance of the debt for which it is held. Under these circumstances, there is no reason, upon our cases, for holding the bank guilty of a conversion. See *Ball* v. *Stanley*, 5 Yerg., 199; *Upchurch* v. *Darnell*, 3 Sneed, 444; *Scruggs* v. *Lester*, 1 Heisk., 150; *Memphis City Bank* v. *Smith*, 110 Tenn., 337.

While, in the absence of express authority, the rule is that a pledgee, upon sale after default, cannot become the purchases of property pledged to secure him, nevertheless, it is well settled that "the purchase by the

pledgee, however, so long as he retains possession and control, does not amount to a conversion of the property and cannot be so treated by the pledgeor." 31 Cyc., 880; *Terry* v. *Birmingham National Bank,* 93 Ala., 599; *Winchester* v. *Joslyn,* 31 Colo., 220; *Bryan* v. *Baldwin,* 52 N. Y., 232; *Kansas City First National Bank* v. *Rush,* 85 Fed., 539. To the same effect, see *Glidden* v. *Mechanics Bank,* 53 Ohio St., 588, also reported in 43 L. R. A., 737, where all the cases are collected in a note—all being to the same effect.

Under the cases referred to here, where the pledgee without authority becomes the purchaser of securities hypothecated with him, the pledgeor can either treat the sale as valid and hold the pledgee liable for the amount bid by him at such sale, or the pledgeor can treat the sale as a nullity. The pledgeor, however, cannot treat such sale as a conversion and hold the pledgee liable for some alleged valuation upon the stock, so long as the pledgee retains possession of the stock and does not refuse to return it after proper tender of the amount of his debt.

The bank insists, however, that by reason of the provisions contained in the face of its collateral note, it was entitled to become the purchaser of this stock at the sale held by it. This provision has been heretofore referred to and is to the effect that, "in case of any exchange or addition to said collateral, we agree that the above agreements and provisions shall extend to such new or additional collateral."

It is insisted that when Mr. Wood deposited the Tennessee Iron Ore stock as additional collateral for the security of this $15,000 note, the bank became entitled, under the provisions of the note just quoted, to subject the stock to sale and to become the purchaser thereof, just as it was entitled to treat the collateral mentioned in the face of the note.

We cannot assent to this proposition, but think that the chancellor's decree was correct.

This provision in the note was intended to refer to collateral deposited by the maker of the note, unaccompanied by any other written agreement. It will be recalled that when Mr. Wood placed with the bank the stock of the Tennessee Iron Ore Company, he at the same time gave to the bank a letter or agreement, reciting the purposes for which, and the conditions upon which, it was pledged. It is to this agreement that we must look to determine the rights of the parties with respect to this stock, rather than to some other general contract existing between the parties, in which the stock was not mentioned.

It will be remembered that after the deposit with the bank of the stock of the Tennessee Iron Ore Company, the $15,000 note was renewed several times, but in none of these renewals was this stock mentioned or referred to. If the bank had desired to bring this stock within the terms and provisions of the $15,000 note, it should have made specific mention of the stock in one of these renewal notes. Especially, is this true when there was

in existence a written contract of pledge with reference to this praticular stock, the provisions of which controlled until they were superseded or vacated by some act or agreement of the parties.

While it has been held in Tennessee (*Hanover National Bank* v. *Brown,* Chy. App., 53 S. W., 206), that these provisions in a note authorizing a bank to hold, as security for a general indebtedness, property pledged for a particular debt, are valid, nevertheless an examination of the authorities shows the rule to be that such an agreement will not be construed so as to extend the obligation beyond that intended by the pledgeor; and, if such agreement is on a printed form furnished by the bank and signed by its customer, and any doubt arises as to its proper interpretation, it will be construed in favor of the customer. *Harris* v. *Frankfort Bank,* 77 Md., 433; *Hathaway* v. *Fall River National Bank,* 131 Mass., 14; *Gillet* v. *Bank of America,* 160 N. Y., 549.

It cannot be said that the general provisions in a printed bank note, with reference to property pledged at the bank and not mentioned in the note, can override, add to, or vary the terms of a definite written agreement particularly witnessing the pledge of this property.

Upon the question of the allowance of attorneys' fees, we think there is no error in the chancellor's decree. While a stipulation in a note for attorneys' fees is valid and will be enforced by this court, the court is not bound by a provision to the effect that any particular amount shall be allowed for such fees, and no matter what stipu-

lation as to the amount is made in the face of the note, it will not be enforced unless it appears reasonable to the court.

It is not necessary to determine whether, under a strict construction of the provisions of this note, the complainant would be entitled, as attorneys' fees, to 10 per cent of the full amount of the note or 10 per cent of the balance due upon the note. We think the sum allowed by the chancellor is a reasonable fee, and therefore no more than that will be allowed by this court. We are not disposed to interfere with the allowance of attorneys' fees in the lower court, unless we can see that some injustice has been perpetrated. Such matters are to a great extent within the discretion of the court, and we will not interfere with the exercise of that discretion unless we think the allowance made is materially wrong.

In this case, the decree of the chancellor on the note was for more than $13,000. Aside from the injunction sued out against the sale of this collateral hereinbefore mentioned, a protracted fight was made against the bank in this suit, much proof taken, and the bank's counsel put to much labor, and we do not consider the 10 per cent fee allowed to be excessive. It is, however, sufficient and the allowance will not be disturbed.

While the bill in this case does not specifically pray for the relief that the chancellor has granted to the complainant, nevertheless upon this bill and upon the cross bill all the facts that we have stated are made to appear,

Bank v. Wood.

and under the prayer for general relief and to put an end to the litigation between these parties, we think the chancellor properly made this decree. It settles the rights of all the parties and ends this controversy, and will be affirmed and the cause remanded for execution thereof. Appellant will pay the costs of this court.