HARALSON et al. v. JONES et al.—232 S. W. (2d) 415.

Western Division.  At Jackson.  August 15, 1950.

Petition for Certiorari denied by Supreme Court, August 31, 1950.

H. L. Feibleman and W. C. Rodgers, both of Memphis, for Jones.

T. B. Passmore, of Memphis, for complainants.

SWEPSTON, J. This is a suit in equity to purge a transaction of alleged usury and for "further, other and general relief" as the facts appear.

After a hearing on oral testimony before the Chancellor under a written stipulation filed in the cause waiving a jury trial and providing for oral testimony, the Chancellor dismissed the bill as to usury as to both defendants but sustained it against Jones, dba Block Realty Company, on a finding of conversion of the proceeds of a check in the sum of $750.00.

Defendant Jones appeals from that finding and decree; complainants appeal from the dismissal of the usury charge and the failure of the Court to find conversion of an item of $112.18 also.

The review by this Court is therefore under Code Section 10622 whereby the decree below is prima facie presumed to be correct, unless the evidence preponderates against its correctness.

It will be conducive to a grasp of the case to abstract the pleadings and the evidence. The bill alleges that prior to August 4, 1947 complainants being the owners of a certain lot had begun construction of a house and had expended more than $1,000.00 when they found they would have to borrow money to complete the construction; that having seen an advertisement of defendant Ben Block Jones to the effect that he was in the business of financing such construction they went to his office for that purpose; that an estimate of the probable cost of completion was made by them jointly and a temporary note of $2250.00 due in four months was executed, with the understanding that said note would then be refunded by a series of monthly notes of $40.00 each, and said note was secured by a deed of trust on the property; that it was agreed complainants would purchase all materials and employ all labor and supervise construction, and that said bills would, upon presentation to Jones by complainants, be paid by him out of said fund; in this connection the bill alleges: "The method by which said payments were made (was) by the presentation of bills for material and labor made out to complainants and by them presented to the said Jones for payment whereupon the said Jones issued *checks payable to complainants* with notations thereon that said checks were in payment of

certain bills then in the hands of the said Jones and complainants then and there endorsed said checks and left *them in the hands* of said Jones to be remitted to the particular creditors to whom said bills were due; . . ."

That in December, 1947 when the four months note had matured complainants at the instance of Jones executed what complainants *assumed* to be a series of monthly notes in the sum of $40.00 each for the *same total* as the temporary note and secured the same by deed of trust as before; that at the time "not all of the bills had come in and had not been paid off and complainants did not know, nor were they told, the amount that had been paid off nor the amount of the unpaid bills and that the said Jones made up and presented to the complainants a series of notes and a deed of trust to secure same the amount of which the complainants at the time did not undertake to ascertain for lack of knowledge both as to the expenditures theretofore made and the amount of bills then outstanding to complete said structure." A copy of said trust deed is then exhibited and it shows the total amount to be $4000.00 principal consisting of 60 monthly notes of $40.00 and a final "balloon" note of $1600.00 and ten semiannual interest notes.

"That complainants *assumed* that the said Jones financed said transaction out of his own funds and did not know to the contrary until some time after this said second series of notes had been executed; that the said Jones never surrendered to the complainants the original note and Trust Deed securing same until some eight months thereafter when the complainants had employed an attorney to inquire into said transactions for the purpose of determining the amount of said second series of notes and for obtaining an itemized statement of ex-

penditures made by the said Jones for which purpose said notes and Trust Deed were executed.''

Then follows a recital of the correspondence with Jones' attorney and a statement of the delay in getting information all of which reflects that the attorney, the late A. D. Bearman, was ill and out of the city a great deal. From one of these letters from Mr. Bearman, Ex. 7, it appears that C. A. Tindall had purchased the $4000.00 series of notes.

The bill then charges that from an examination of the itemized account in Bearman's letter, Ex. 9, complainants cannot identify more than $150.00 of legitimate expenditures by Jones and less than $400.00 paid by Tindall for complainant's benefit; that the first item of the Jones record is a check for $750.00, which complainants remember endorsing and leaving with Jones but complainants never knew the purpose of same and ''that complainants never received any cash or check for their own use and benefit from either the said Jones or the said Tindall except in payment of said bills as stated heretofore; that the total legitimate expenditures amounted to less than the original note for $2250.00.''

Finally it is alleged that there was ''privity of understanding'' between Tindall and Jones to extract usury from complainants to the amount of $1600.00 represented by the ''balloon'' note, less reasonable compensation to Jones for his services. The bill nowhere alleges that usury has been paid but prays that the $1600.00 note be purged of usury.

The bill waived the oath to the answers except as to the accounting called for by way of discovery.

Defendant C. A. Tindall answered under oath that he was a bona fide purchaser for value, having paid $3000.00

for the $4000.00 series of notes, dated December 24, 1947 to the holder of bearer notes, Jones; that he paid at the direction of Jones $2500.00 on December 30, 1947 to Campbell Yerger, Attorney, and $500.00 to Jones on January 24, 1948.

Defendant Jones answered under oath. He admits that he was requested by complainants to make a temporary or "construction" loan and that such a loan of $2250.00 was made.

He avers that when the temporary loan became due, he was requested to obtain the permanent loan which he did as the same is now arranged; that he acted as a broker and was to receive $500.00 for his services, but because of the unexpected building costs there was only $154.40 left to pay him and that is all he has received for his services when the notes were brokered to Tindall; he denies that was any agreement between him and Tindall to extract usury by means of the $1600.00 balloon note and denies there was usury in the sale of the notes. He exhibits a detailed account showing how both the temporary and the permanent loan were consumed, which will be referred to later herein, and averred that every cent shown on the account had been either turned over to complainants or expended by Jones for complainants' benefit.

The defendant Jones' assignment of error is: "The Honorable Chancellor erred in rendering judgment against appellant Ben Block Jones for the item of $750.00, shown on the sworn account, because, (1) this was outside both the pleadings and prayer, (2) appellees were bound by the sworn answers exacted, and, (3) there is no evidence to support the judgment or decree."

Complainants' assignments are:

"I.

"The trial Court erred in not granting further relief as prayed for in complainants' bill, in addition to the relief granted upon the hearing.

"II.

"The trial Court erred in not decreeing judgment against defendant, Ben Block Jones, for $112.18, converted to his use and benefit of the trust funds of complainants in his hands.

"III.

"The Court erred in not holding that the excess in notes taken in funding the original construction note in accordance with his original agreement with complainants, was recoverable usury chargeable to defendant, Jones, he having undertaken the transaction with complainants as 'financier' and not as broker."

Referring to (1) under defendant's reasons supporting his assignment, we think the Chancellor was not in error in this respect, if his decree is supported by the evidence.

■ ■ Granting that the main effort of the bill was to establish usury in the notes and that the particular relief prayed was against usury in the permanent series of notes, nevertheless the $750.00 check was a material issue between complainants and Jones, the former saying they received no benefit from the check, the latter claiming complainants received the cash on it; it was a material part of the entire transaction, was particularly referred to in the bill and relief under the general prayer would not be inconsistent with the relief from usury on

the permanent notes, nor was the relief of a character to take the defendant by surprise.

Gibson Section 557 second par. states: "If the complainant is not entitled to the specific relief he prays, he may, under the general prayer have such other relief as, on the pleadings and proof, he is fairly entitled to, provided it is not of a character to take the defendant by surprise. The relief under the general prayer must be such as follows, ordinarily and logically, from the pleadings and proof. If the bill prays for general relief only, the complainant can orally pray, at the hearing, for the specific relief he is entitled to, on the case made out by the pleadings and proof."

Hutsell v. Citizens Nat. Bank, 166 Tenn. 598, 64 S. W. (2d) 188, holding that where the prominent ground of relief is not sustained by the proof, but the bill and answer contain a full and clear history of the transaction and the evidence discloses other grounds of equitable relief, same should be granted under prayer for general relief.

Talbott v. Manard, 106 Tenn. 60, 59 S. W. 340, where defendant purporting to have brokered a loan for a commission had actually loaned his own money and had carried the commission into a renewal note and eventually had taken an absolute deed to the collateral on default of the borrower, held, in an action by latter to set aside the deed borrower, under general prayer, could recover the commission paid. See also, Dodd v. Benthal, 51 Tenn. 601 and Caldwell v. Huffstutter, 173 Tenn. 225, 116 S. W. (2d) 1017.

Defendant's "(2)" and "(3)" require a discussion of the evidence. "(2)" has reference to the rule stated in Gibson, Section 460, to the effect of a sworn answer

called for by complainant, by which the answer becomes evidence for the defendant as to denials of averments of the bill if the answer is directly responsive thereto; and the complainants' bill must be dismissed unless he can overcome it by two witnesses to the material facts, or by one witness and corroborating circumstances, or by circumstances or by documentary evidence, of greater weight than the evidence of one witness.

The Chancellor was of opinion that the answer of Jones showing the $750.00 check and all other items of the account to have been expended for the benefit of complainants was overcome by the testimony of Whittenton, an official of the Bank, on which the check was drawn and by circumstances consisting of the endorsements on the check, the teller's stamp and the amount of Jones' deposit on the day the check appeared to have been cashed.

We find ourselves unable to agree with the Chancellor. A review of all the circumstances leading up to the particular check transaction and those following it, the conduct of the parties, the quality of the testimony of complainants and his wife, the records produced by Jones and the reasonable inferences to be drawn from the particular indicia of the check itself all convince us that complainants received the $750.00.

The picture as we see it is this.

Complainants are not illiterate; Haralson is a street vendor of ice cream and has sold fruit and vegetables on the street and previously he worked at a sash and door or mill-work manufacturing plant; his·wife finished the eleventh grade in school. They bought the lot on deferred payments secured by trust deed, which he read and admit they know what a note and a mortgage are.

Yet when he takes the stand he says he does not remember he endorsed the $750.00 check or whether he even saw the check. R. 38. After conferring with his wife during a recess, he thinks he did endorse the check. As to the first or temporary note he says, R. 45, he told Jones he needed about $1500.00 to complete the house; he was examined and testified, R. 47, as follows:

"Q. You read the note for $2250.00 that your lawyer introduced here? A. Yes, sir.

"Q. You read that, and you saw at the time you signed it that it was for $2250.00, didn't you? A. Yes, sir.

"Q. If you were only getting $1500.00 why in the world would you sign a note for $2250.00? A. Well, I signed it."

As to the permanent series of notes for $4000.00 they both say that Jones had represented that the temporary note would be split up into monthly permanent notes of the same total amount and that he said nothing about increasing the amount, that they did not know the total amount of the series, although she admitted seeing the "balloon" note of $1600.00, R. 37 and 70. Yet, they signed the notes without question or objection despite the testimony of Haralson now that at the time he did not know how many bills were outstanding, despite his contention that there was more than enough money to complete the house left in the $2250.00 fund. This testimony is obviously false, because Exhibit 6 to Haralson is a written authorization for the sale of the $4000.00 series of notes signed by both complainants and she admits having seen the figure on that paper, R. 74. Furthermore, they began paying the notes at the bank when the first one became due January 24, 1948 and paid several be-

fore, so far as this record shows, they consulted a lawyer, R. 54 and Ex. 4.

Another detail illustrating the quality of his testimony is that in his sworn bill he said he received no cash in hand either on the $750.00 check nor at any other time on any other check. Exhibit 18 is a check for $28.00 representing the ninth item of Jones account, R. 19, of disbursements dated October 4, 1947 and payable to Haralson. At R. 48 he admits getting the check, but at R. 61 and 62 when his attorney directed his attention to the endorsements on it and under suggestive questions, he denies it in the following language, after he had been asked about the preceding item:

"Q. And another for James Haralson, Jr. and on the back endorsed by you and paid to the order of Sudo Mae, something, and then endorsed by Ben Block Jones; do you know about that check? A. Yes, sir.

"Q. Did you cash it or somebody else? The one whose name is last on the back? A. As I remember it, I cashed it. If it is the one I am thinking about, I cashed it.

"Q. Look at it. It says payable to somebody else. A. This is not the check I am thinking about you were talking about. He gave me some check on the refund when we were closing out.

"Q. You don't know what that was for? A. No, sir.

"Q. Who was Sudo Mae? A. That is the lady who worked in the office, the stenographer or something.

"Q. In whose office? A. Mr. Jones' office.

"Q. Did you ever cash that or was it cashed after you endorsed it. A. I never cashed it.

"Q. Do you know what it was for? A. No, sir.

"Q. Did you owe Miss Mae anything? A. No, sir."

The check shows the endorsements as follows:

"James Haralson, Jr.

Pay to the order of Suda

Mae Drawns

Ben Block Jones

Suda Mae Drawns

Rm. 711½ Forest Park Apts.

Memphis, Tenn.

For deposit, etc.

Lynn's, Inc.''

The record shows she was an employee of the defendant, but there is no express explanation in the record as to why the check for $28.00 was so endorsed, but in view of Haralson's vacillating testimony, as above shown, explanation is hardly necessary. The probable fact is that she cashed the check for complainant out of her own funds and then endorsed it to Lynn's, Inc., because the check was dated October 4, 1947, which was a Saturday and was finally deposited by Lynn's, Inc., at the drawer bank on October 10, following. The proof is that complainants had no bank account and the day being Saturday and the amount small indicate such an explanation. There is no reason to suppose that this employee was "chiseling" complainants.

Again, R. 48 he denies getting a check payable to Union Planters National Bank for $183.00 and says he does not know what it was for, but he admits R. 65 authorizing it; Exhibits 7 and 8 show he drew a draft on Jones, payable to Memphis Building Material Company. Again R. 63 he denies he got the cash on a check for $112.18, Exhibit 12; defendant's testimony is that he cashed the check for him in the office and put the check in the Haralson file by mistake instead of depositing it and the

office drawer was short that amount until this suit arose and then he found the check; it will be readily seen that the check, although endorsed by Jones for deposit, bears no bank cancellation or paid stamp. Again this check was dated January 24, 1948, which was a Saturday.

It is to be noted also that the original bill alleges that all checks for labor and material were made payable to complainants with a notation of the creditor's name, then endorsed by complainants and left in the hands of Jones to be mailed. Haralson testified first in support of this allegation, R. 36 and then denied having so testified R. 46.

The obvious purpose was to lend plausibility to his claim about the disputed check for $750.00. The exhibits clearly show, however, that the checks were made to the creditors as payees.

Coming now to the $750.00 check, it is payable to the Haralsons, is endorsed by them, then by Jones, and last by Ruth Gothard, admittedly an employee of Jones. The check is dated August 23, 1947, which was a Saturday. The teller's stamp and the paid perforation are dated Monday the 25th.

Ordinarily a check is paid to the last endorser and the record 126 shows the check was cashed and not deposited.

Miss Gothard testified that she is now employed by P. C. Clarke, Inc.; that she was employed by Jones from January 1 to October 1, 1947 during which time she did most of his banking and was, therefore, known at the Bank; that on more than one occasion she went to the Bank with payees of checks issued by Jones to identify them so they could get the check cashed and usually the teller asked her to endorse for identification; that she remembers complainants and she went to the Bank with

them after Jones had endorsed the check in order to identify them; that the teller, Mr. Carline, asked her to endorse and handed her a pencil, which is why her endorsement is in pencil; that it was Saturday morning but she was not sure of the time (of day); that complainants were handed the money and that she received none of it; that she was sure the check was never deposited to . Jones' account, because her name would not appear on any checks deposited and that she always made her deposits early in the morning with Miss Phillips, another teller.

Defendant Jones testified that since Haralson was going to supervise the work of finishing the house and obtain labor and material, he quit his ice cream vending. That he said he needed a little money to go on and would have to pay cash on delivery of same materials, so they agreed that he could have an advance of $750.00 to start with. This was 18 days after the date of the note. That he gave him the check and after they and Jones had endorsed it he sent Miss Gothard with them to the Bank; that he got none of the money himself.

Complainants admit that they were out of money at the time, R. 46.

Witness Whittington, an official of the drawee Bank, knew nothing of the facts. He said the check looked like it was cashed by the last endorser and not deposited; that it could have been cashed after noon on Saturday and stamped with the Monday stamp R. 127 and 133, putting it into the next day's business and that they do hold them over lots of times; that all teller's stamps do not have an after hours indication but that he believes the item would be posted as after hours. (R. 135.)

It was then shown by him that defendant deposited $892.22 on Monday 25 but he could not say whether an item of $750.00 was a part of same.

Jones then showed an additional deposit on the same day of $104.88 and a deposit on Saturday 23 of $1170.50. The deposits on both days are accounted for in detail by his Exhibit A., R. 146—1, and the $750.00 item does not there appear.

There is one other piece of evidence that we think throws light on this matter and corroborates Miss Gothard and Jones. It is Exhibit 16, a check to Eugene Howard, dated Sept. 5, 1947 for $175.00 endorsed by payee, by Jones and last by Ruth Gothard, and was paid Sept. 6. Complainant R. 61 admits he authorized this item. The relevancy of it is that it was no doubt cashed for the payee Howard by Miss Gothard identifying him at the Bank just as she says she did for complainants on the check in dispute; otherwise there is no possible reason for Miss Gothard's personal endorsement.

Perhaps we have unduly extended this analysis of the evidence but we have demonstrated at least to our own satisfaction that the decided weight of the whole evidence is against the findings of the Chancellor that complainants did not get the proceeds of the check and that Jones did, especially (1) in his finding that Miss Gothard was completely discredited in her statement that she went to the Bank with complainants about 11 o'clock on Saturday, because nowhere does it appear that she went about 11 o'clock and (2) that the check was cashed on Monday instead of Saturday, because no witness says it was on Monday, the teller's stamp is not by any means conclusive of the actual day and because Miss Gothard says it was Saturday and her entire testimony

is very plausible in the light of the above detailed analysis of the evidence, and (3) in his finding that the proceeds of the check were a part of the deposit of Jones totaling $892.22 on Monday 25, because that could only be true in any view after first finding that Jones or Miss Gothard got the money.

We, therefore, sustain defendant's "(2)" of his assignment for the reason that the decided weight of the evidence is against the findings of the Chancellor.

Now, as to complainants' assignment of error, I, we think the Chancellor was correct in denying relief on the principal aspect of the bill, the alleged usury.

There was no allegation of proof that complainants had paid usury. The evidence is that they had paid only about $1000.00.

Defendant Tindall testified that he was a bona fide purchaser for value and without notice of any equities. Complainants' witness, defendant Jones, testified to the same as regards Tindall. There is no evidence to the contrary. Assignment II has been covered supra in the discussion including the check for $112.18.

Assignment III has already been covered in part. No commission was charged by Jones on the temporary note and it was not brokered. He simply took the $2250.00 note and negotiated it to Florida Realty Company. The only expense to Haralson was the title expense, etc., of $77.41.

We have already shown that he was authorized in writing to sell the permanent notes. He was to receive $300.00 brokerage and commission for his services, but because of the building costs exceeding the proceeds of the permanent loan, he received only $154.40, R. 20.

All of complainants assignments are overruled.

The decree of the Chancellor awarding a money recovery to complainants is reversed and the bill dismissed. The decree dismissing the bill as to usury is affirmed. Complainants will pay costs.

Anderson, P. J., and Baptist, J. concur.