# D. B. MONTGOMERY v. B. H. NICELY.
## —301 S. W. (2d) 379.

Eastern Section.   August 10, 1956.

Petition for Certiorari denied by Supreme Court December 7, 1956.

Lodge Evans, Elizabethton, for appellant.

Hallie K. Riner, Elizabethton, for appellee.

HOWARD, J.  This suit involving a dispute over the location of a boundary line was originally filed in the Circuit Court of Carter County where the complainant herein, D. B. Montgomery, sued the defendant, B. H. Nicely, for damages for valuable timber alleged to have been wrongfully cut and removed from plaintiff's land by defendant during the summer of 1953.  Prior to and at the time the dispute arose the parties owned adjacent lands in the 4th Civil District of Carter County, the complainant's track containing "200 acres * * * more or less," and the defendant's track, which lies to the south of the complainant's, containing "35 acres, more or less."

After issues were joined in the Circuit Court the case went to trial on October 27, 1954, before a jury, and after hearing plaintiff's evidence the Circuit Judge, on his own motion, decided the matters involved were of an equitable

nature and accordingly ordered the case transferred to the Chancery Court.

Thereafter, on December 10, 1954, complainant filed the bill herein in the Chancery Court, alleging in substance that he was the owner of the 200 acre tract which he acquired by deed from E. M. Miller, dated July 3, 1946, on which there was growing "a large number of very fine and expensive trees, consisting mostly of Hemlock, Oak and Poplar."; that disregarding complainant's ownership of the land the defendant wrongfully entered thereupon "and cut and destroyed over 112 valuable trees covering an area of approximately 4 or 5 acres, said timber being estimated at approximately 70,000 board feet, and in addition damaged all of the young growing timber * * * on same * *, and * * * that it would be proper for the Court to appoint * * * a disinterested and competent surveyor to go upon the tract in question and have the same surveyed so that the rights of the parties may be properly established as to the boundary line, and that a proper accounting be made as to the amount of timber * * * cut by the defendant * * *"

The bill further alleges that because of the dispute over the proper boundary line it is a matter of equitable jurisdiction, and complainant "files this bill for the purpose of having the matter properly established." The bill then prays (1) for an order appointing a competent surveyor to establish the boundary line, (2) that complainant be awarded adequate damages by reason of the defendant's wrongful acts, and (3) for "such other and further relief as he may be entitled, and * * * for general relief."

Answering the defendant denied any wrong doing on

his part, and averred that the timber cut and removed was from his land.

Upon the hearing, which was on depositions, the Chancellor finding there was a sharp conflict in the proof as to the location of the defendant's northern boundary line, appointed the King Engineering Company of Kingsport, Tennessee, a reputable concern, "to make such survey only as may be necessary to determine whether or not the defendant cut any timber on the property of the complainant," and the hearing was continued for 30 days for this purpose.

Thereafter the King Engineering Company having completed the survey on October 19, 1955, filed its written report on November 1st reciting that the timber cut by defendant was not on complainant's land, and the Chancellor by decree established the northern boundary of defendant's land as " 'beginning on a Black gum stump on the side of the road,' as mentioned in said deed, and over which there is no dispute, 'and running North 45° 0' minutes West 1238.2 feet (75 poles) to the Creek,' " and denied complainant's claim for damages.

The complainant has perfected an appeal to this Court and errors have been assigned, the first being that the Circuit Judge erred in transferring the case to the Chancery Court, because said Court having no jurisdiction of the subject matter, the decree rendered was void.

Under statute in this State the Chancery Courts have "jurisdiction to hear and determine all cases in which the boundary line or lines of adjoining or contiguous tracts of land is one, or the only question at issue in the case." T. C. A. sec. 16-606; Code 1932, sec. 10368.

■■ Next it is urged that the Chancellor erred in establishing the boundary line between the lands owned by the complainant and defendant because the relief granted was beyond the scope of the pleadings and prayer for relief.

As previously pointed out, the complainant not only alleged that because of the matters involved, "it would be proper for the Court to appoint * * * a disinterested and competent surveyor to go upon the tract in question and have the same surveyed so that the rights of the parties may be properly established as to the boundary line," and "files this bill for the purpose of having the matter properly established," but likewise prayed that this be done, and for "such other and further relief as he may be entitled, and * * * for general relief."

It appears to us that the relief granted was not only in accordance with the averments of the bill, but substantially conformed with the prayer for special relief, i. e., locating and establishing the boundary line between the parties, which was the paramount issue in the case. Furthermore, the rule is well settled in this State, that under the prayer for general relief the Court may grant any relief other and different from that specifically indicated and prayed, which is justified by the averments of the bill and the proof. Gibson's Suits in Chancery, 4th Ed., sec. 557, p. 474; Haralson v. Jones, 33 Tenn. App. 572, 232 S. W. (2d) 415; Rhodes v. Johnson, 32 Tenn. App. 127, 222 S. W. (2d) 38; Holston Nat. Bank v. Wood, 125 Tenn. 6, 140 S. W. 31; Tennessee Ice Co. v. Raine, 107 Tenn. 151, 64 S. W. 29.

■ Moreover, the complainant having invoked the jurisdiction of the Chancery Court to establish the boun-

dary line, he is now estopped to deny the jurisdiction of that Court to grant the relief sought, the applicable rule being stated in Gibson's Suits in Chancery, 4th Ed., as follows:

"The principles underlying estoppels in general are applicable to judicial estoppel. The latter is the penalty or consequence visited upon those who mislead others by their attitudes in judicial proceedings. An adversary party may rightfully assume that the other party means what he says by word or conduct and that he will be consistent throughout the litigation. Hence we have the rule forbidding a change of position, contention or of affirmation once solemnly taken about a material issue in a case. This doctrine of judicial estoppel is different from common estoppels in that the party relying upon the doctrine of judicial estoppel need not show prejudice." Sec. 67a.

In Stamper v. Venable, 117 Tenn. 557, 97 S. W. 812, 813, the Court said:

" 'If parties in court were permitted to assume inconsistent positions in the trial of their causes, the usefulness of courts of justice would in most cases be paralyzed. The coercive powers of the law, available only between those who consented to its exercise, could be set at naught by all. But the rights of all men are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come in or are brought before them. It may accordingly be laid down as a broad proposition that one, without mistake induced by the opposite party, who has taken a particular position deliberately, in the course of litigation, must act consistently with it. One cannot play fast and loose.' "

■ Finally, the complainant contends that the evidence preponderates against the decree establishing the northern boundary of defendant's land as " 'beginning on a Black gum stump on the side of the road,' as mentioned in said Deed, and over which there is no dispute, 'and running North 45° 0′ minutes West 1238.2 feet (75 poles) to the Creek.' "

After carefully reading the record, we think that the evidence tends to support rather than preponderate against the decree, and we, as did the Chancellor, adopt the report of the survey made by the King Engineering Company which reads, as follows:

"Prior to the date of this survey, Mr. Dan M. Laws, Jr., Attorney for plaintiff, and Miss Hallie K. Riner, Attorney for the defendant, and the writer, held a conference in the office of King Engineering Company in Kingsport, and at that time it was agreed that Mr. D. B. Montgomery or Mr. Ed Heaton would point out to the surveyor of King Engineering Company a black gum stump, which had been agreed upon by all parties concerned, as a corrrect corner.

"The writer also spent considerable time making a study of the file in the above styled case in an effort to determine the correct course to run the one disputed line, and in the course of this study the writer paid particular attention to Exhibits 1-6 to the deposition of Mr. B. H. Nicely, Exhibit No. 1 being a deed dated the 19th day of July 1951, between John Holtsclaw and wife, Bertha Holtsclaw, part of the first part and B. H. Nicely, party of the second part. This deed has a call of 'South about 33° E., 100 poles, more or less, cross a ridge to the beginning.'

"Exhibit No. 2 is a certified copy of a deed dated the 13th day of April 1951, between Willie Ledford, party of the first part and John Holtsclaw and his heirs, party of the second part. This deed calls for a southeast course for the line under consideration.

"Exhibit No. 3 is a certified copy of a deed dated the 30th day of March 1945, between Bert Ledford, party of the first part and Willie Ledford, party of the second part. In this deed the call for the disputed line is the same as in Exhibit No. 2.

"Exhibit No. 4 is a certified copy of a deed dated the 6th day of July 1940, between Joe Perkins and wife, Fleecie Perkins, party of the first part, and Bert Ledford, party of the second part. In this deed the call for the disputed line is the same as in Exhibit No. 2.

"Exhibit No. 5 is a certified copy of a deed dated the 19th day of September 1925, between Clarence Calhoun and wife, Mary Calhoun, party of the first part, and Mary J. Pressnell and Joe Perkins, party of the second part. In this deed the call of the disputed line is the same as in Exhibit No. 2.

"Exhibit No. 6 is a certified copy of a deed dated the 3rd day of February 1921, between E. M. Miller, party of the first part, and Clarence Calhoun and wife, Mary Calhoun, party of the second part. The conditions and circumstances of the disputed course is the same in this deed as all of the previous Exhibits, with the exception of Exhibit No. 1.

"From the above it is noted that in examining chain of the title that all conveyances with particular

reference to this one disputed line calls for a south-east course, 100 poles, more or less, crossing a ridge to the beginning, with the exception of Exhibit No. 1, which calls for South about 33° E. It is the opinion of the writer that this course was intended to be S. 45° 0' E., which is always referred to as a southeast course.

"On October 18 and 19, 1955, the black gum stump, which is a point agreed upon by all parties concerned, was pointed out to us by Messrs. Montgomery and Heaton and from that point a course No. 45° 0' W., was run across the hill and to the creek, said line having been cleared and stakes set at intervals, this line was 1238.2 feet long (75) poles, which is considerably short of the 100 poles, more or less, as called for in the deed. There was no indication of timber having been cut in recent years along this line. Therefore it is our opinion that the defendant has not cut any timber on the property of the complainant."

There was other proof introduced by the defendant showing that his line ran generally in an east-west direction, and according to the testimony of I. A. Bumgardner, a surveyor, the defendant's line ran from the black gum stump, the agreed corner, thence North 58° W. 68 poles "to a stake where a birch was called for in a branch, birch now cut down, corner to W. C. Lunceford tract, and to J. H. Montgomery." This witness further testified that the south-east corner of an old rail fence stood near the stake, and that the remains of the fence ran generally in a northerly and westerly direction.

It further appears that the deed to the Lunceford tract established a stake in the branch as the south-west corner,

but the deed makes no reference to the adjacent lands lying to the south or west of said tract, and there was proof that the complainant's land did not extend east of said corner.

Complainant's witness Dan J. Berry, a surveyor, testified that he attempted to survey the land according to complainant's deed, and that he found certain calls stated "up the branch" which should have been "down the branch," and also "north" when it should have been "south," and that he could not take the deed and survey the land and locate corners of adjacent lands described by other deeds.

Except for the references in defendant's deed to degrees and poles, the northern boundary of his land appears to be rather definitely fixed by the words "a black gum, now down * * * thence north * * * west a straight line * * * to a stake where a birch was called for in a branch, birch now cut down, corner to W. C. Lunceford tract and to J. H. Montgomery," which description is similarly referred to in all previous deeds.

■ The rule is well settled that a call for a natural or fixed object prevails over calls for courses and distances unless to do so results in an absurd conclusion and one manifestly not intended. Scarbrough v. Isham, 29 Tenn. App. 216, 196 S. W. (2d) 73; Disney v. Coal Creek Min. & Mfg. Co., 79 Tenn. 607; Pritchard v. Rebori, 135 Tenn. 328, 186 S. W. 121; Cates v. Reynolds, 143 Tenn. 667, 673, 228 S. W. 695.

"The safest way to ascertain boundaries is to compare the grants with the marks and natural objects on the

ground.'' Richardson v. Schwoon, 3 Tenn. App. 512, 528. It results that all assignments of error will be overruled and the decree of the Chancellor will be affirmed at appellant's costs.

McAmis, P. J., and Hale, J., concurring.