THE CONNECTICUT INDEMNITY COMPANY, Petitioner,

*v.*

JOHN D. DEGALLEFORD, JR., Respondent.

470 S.W.2d 5

(*Knoxville,* September Term, 1970.)

Opinion filed August 2, 1971.

BISHOP, THOMAS, LEITNER, MANN & MILBURN, Chattanooga, for petitioner.

BROWN & WALKER, Chattanooga, for respondent.

Mr. Chief Justice Dyer delivered the opinion of the Court.

This case comes to this Court by grant of writ of certiorari directed to the Court of Appeals. In this opinion the Connecticut Indemnity Company will be referred to as the insuror, and John D. DeGalleford, Jr., as the insured.

On January 22, 1968, the insuror issued its policy to insured, insuring on the basis of actual cash value, a 1967 Chevrolet and a 1962 Volkswagen against loss by theft. The policy period was for six months with the right of renewal by payment of renewal premiums. Prior to the expiration of the policy period the insuror would mail insured a notice of renewal premium due, which notice described the vehicle covered and the amount and type of insurance. Upon payment of the renewal premium, this notice became a part of the policy of insurance. The first policy period ended on July 1, 1968, and insuror mailed a notice of renewal, which described the vehicles insured as a 1967 Chevrolet and a 1962 Volkswagen. Insured paid this renewal premium. Prior to the expiration of the second policy period the insuror mailed to insured its renewal notice again, describing the vehicles insured as a 1967 Chevrolet and a 1962 Volkswagen. Insured paid this renewal premium.

In October, 1968, during the second policy period, insured sold the 1967 Chevrolet and replaced it with a

1964 Chevrolet. Neither the insuror nor its agent were notified of this change. On April 2, 1969, during the third policy period, the 1964 Chevrolet was stolen. Insuror denied coverage, resulting in this suit by insured. The theory upon which the suit was filed and tried was that this 1964 Chevrolet was an "owned automobile" within the meaning of the policy in that it "replaced an owned automobile" as defined in the policy. The pertinent provisions of the policy are as follows:

"Owned Automobile" means

(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded,

*   *   *   *   *   *

(c) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided

(1) it replaces an owned automobile as defined in (a) above, or

(2) the company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, or

*   *   *   *   *   *

The chancellor found, as insured contended, this 1964 Chevrolet was an "owned automobile" under the terms of the policy in that it replaced an "owned automobile"

and coverage was afforded. On this holding the Court of Appeals reversed the chancellor.

On this issue the insuror contended that in order to constitute an ''owned automobile'' under the terms of the policy, insured was required to notify the insuror of the purchase of the 1964 Chevrolet, replacing the 1967 Chevrolet, within thirty days, or at least within the policy period. Without such notice there was no coverage.

It is admitted the stolen 1964 Chevrolet was not a vehicle described in the policy, or any renewal thereof, and that insured had obtained title thereto during the policy period prior to the period in which the loss occurred. Coverage is then determined by the construction to be placed on sub-section (c), copied above. There is no ambiguity in the language of this sub-section. As applied to the facts of this case it clearly states that for this 1964 Chevrolet to become an ''owned automobile,'' for which coverage would be afforded, without said vehicle being described in the policy, insured would have to acquire ownership during the policy period.

■ We agree with the Court of Appeals that the chancellor was in error in holding the policy afforded coverage to this 1964 Chevrolet.

The Court of Appeals then reached the same conclusion as the chancellor by reforming the contract on the ground there had been a mutual mistake of fact. The insuror assigns error to this action of the Court of Appeals on the ground reformation was not an issue in the trial court and the bill contained no specific prayer for such relief.

■ The rule is well settled in this state that under a prayer for general relief the court may grant any other and different relief from that specifically indicated and prayed for which is justified by the pleadings and the proof. *Tennessee Ice Co. v. Raine,* 107 Tenn. 151, 64 S.W. 29 (1901); *Holston National Bank v. Wood,* 125 Tenn. 6, 140 S.W. 31 (1911); *Rhodes v. Johnson,* 32 Tenn.App. 127, 222 S.W.2d 38 (1949); *Haralson v. Jones,* 33 Tenn. App. 572, 232 S.W.2d 415 (1950); *Montgomery v. Nicely,* 42 Tenn.App. 223, 301 S.W.2d 379 (1956). The issue here then is whether under the pleadings and proof the Court of Appeals was justified in reforming this contract.

In the early case of *Dodd v. Benthal,* 51 Tenn. 601 (1871), on this issue the Court said:

While the rules of pleading in a court of equity are more flexible and liberal than in a court of law, yet it is generally true that a court of equity can grant no relief unless such relief be within the purview and spirit of the equities set forth in the bill. But a court of equity regards not mere forms, but looks to the substance of things; and if the facts appear upon the face of the bill, that entitle the party to a specific relief, the court will grant such relief, although the forms of speech adopted in the bill be not technically the most appropriate, and although the form of prayer does not in totidum verbis embrace the specific relief to which the facts stated entitles the complainant. The cardinal rule is, that the bill must not be so vague that the defendant may be surprised by a case that he could not be prepared to meet: * * * Even if the complainant should mistake the relief to which he is entitled, yet if his equities be clear upon the facts, if he have a prayer for general relief, the court will so mould its

decrees as to give him the specific relief to which the facts entitle him. And it is held, that a prayer for general relief, without a special prayer of the particular relief to which the complainant thinks himself entitled, is sufficient, and that the particular relief which the case requires may at the hearing be prayed at the bar. But this relief must be agreeable to the case made by the bill, and not different from it: * * * But the court will not grant relief which is without the scope of the complainant's bill, and not prayed for specifically. 51 Tenn. at 608-610.

In *Caldwell v. Huffstutter,* 173 Tenn. 225, 116 S.W.2d 1017 (1938), this Court referred to the above language in *Dodd v. Benthal,* supra, as follows:

Whatever liberality Court of Equity may have exercised or approved as proper in granting, under a general prayer, relief not specifically prayed for, there are certain well recognized limitations which may not be overlooked. Certain of these are noted in the language just above quoted from *Dodd v. Benthal,* supra. The relief granted must be clearly within the scope of the bill, and it must not be either antagonistic to, or altogether different from, that specifically prayed for. Certainly, the Court would not be warranted in treating a prayer for general relief as a prayer for relief, "not in consonance with the practice of courts of equity." 173 Tenn. at 229-230, 116 S.W.2d at 1019.

In *Southern Housing Co. v. Morton,* 35 Tenn.App. 109, 242 S.W.2d 843 (1950), the applicable rule is stated in the following language:

The power of a court of equity to grant relief under a general prayer where the equities demand it, is liber-

ally regarded, but the Supreme Court has said that " 'the cardinal rule is, that the bill must not be so vague that the defendant may be surprised by a case that he could not be prepared to meet' "; and the " 're-lief must be agreeable to the case made by the bill, and not different from it' "; "it must not be either antagonistic to or altogether different from, that specifically prayed for". *Caldwell v. Huffstutter,* 173 Tenn. 225, 116 S.W.2d 1017, 1019, and cases cited. 35 Tenn.App. at 132, 242 S.W.2d at 853.

In the case at bar the original bill alleges the 1964 Chevrolet is a replacement automobile and as such there is coverage thereon by the terms of the policy. The prayers are for a decree for the amount due under the policy and for general relief. The insuror answered denying the 1964 Chevrolet was such a replacement automobile and also denied insured gave notice of the purchase of a 1964 Chevrolet or the sale of the 1967 Chevrolet.

The proof entered supports the facts we have previously set out in this opinion; that is, the purchase and renewal of the insurance, the sale of the 1967 Chevrolet, and the purchase and loss the 1964 Chevrolet. There is also testimony in the record insured or his wife attempted, but were not successful in notifying the insuror in regard to the exchange of these automobiles.

■ To reach a decision we need to consider another factor; that is, what allegations are necessary to save from demurrer a bill filed to reform a contract on the grounds of mutual mistake in order that we may test the bill in the case at bar against such requirements. The bill in the case at bar will have to meet such require-

ments, since, as stated in *Caldwell v. Huffstutter,* supra, the relief granted must be clearly within the scope of the bill. The requirements of such a bill were discussed at length in *Lebo v. Green,* 221 Tenn. 301, 426 S.W.2d 489 (1968). In a bill to reform a contract on the ground of mutual mistake it is necessary to allege the circumstances causing the mistake and the fact the complainant was free of any fault in the matter.

In the case at bar admitting as upon demurrer all the facts alleged, we find no facts on which the Court would be justified in reforming this contract.

The judgment of the Court of Appeals is reversed and the cause dismissed.

CHATTIN, CRESON and McCANLESS, JUSTICES, and Mc-AMIS, SPECIAL JUSTICE, concur.