IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 1, 2023

## ESTATE OF LLOYD EDWARD TOMLINSON v. MELISSA MALONE, now KING

Appeal from the Chancery Court for Houston County
No. 42CH1-2018-CV-701  David D. Wolfe, Judge

———————————————————

### No. M2023-00470-COA-R3-CV

———————————————————

This appeal arises from a complaint wherein the plaintiff alleged that he had a confidential relationship with his alleged biological daughter and that she induced him, by a promise that she would take care of him, to grant her a remainder interest in his real property.  After a bench trial, the trial court found that a confidential relationship existed between the plaintiff and defendant and that suspicious circumstances existed to support a finding of undue influence.  As such, the trial court entered an order divesting the defendant of any interest that she had in the property and restoring the plaintiff's interest in the property to be held by his estate.  The defendant appeals.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and W. NEAL MCBRAYER, JJ., joined.

Marcus Noles, Camden, Tennessee, for the appellant, Melissa Malone King.[1]

Markley Preston Runyon, Erin, Tennessee, for the appellee, Estate of Lloyd Edward Tomlinson.

## OPINION
### I. FACTS & PROCEDURAL HISTORY

In September 2018, Lloyd E. Tomlinson, then 92 years old, filed a complaint in chancery court against his alleged daughter Melissa King.  The complaint alleged that he

---

[1] The complaint listed "Melissa Malone, now King" as the defendant.  In her testimony at trial, the defendant/appellant identified herself as Melissa King and stated that she was formerly known as Melissa Malone.

and Ms. King had a confidential relationship and that she told him that she would take care of him and that he needed to sign over his assets to her so that she would have control. The complaint further alleged that Ms. King took Mr. Tomlinson to an attorney who drafted a deed granting Mr. Tomlinson's land to Ms. King subject to a life estate held by Mr. Tomlinson, and once the deed was executed, she did not come back to take care of him. Additionally, the complaint stated that Ms. King had taken the title and keys to Mr. Tomlinson's car and refused to give it to him. On the same day the complaint was filed, the trial court issued a restraining order prohibiting Ms. King from transferring, encumbering, damaging, or destroying the real property and from transferring title to the vehicle.

In December 2018, Mr. Tomlinson filed a motion for the trial court to enter a default judgment against Ms. King for failure to plead or defend against the complaint. The trial court subsequently entered an order divesting Ms. King of her interest in the real property and vesting the real property solely in Mr. Tomlinson. The court further ordered that Ms. King return Mr. Tomlinson's keys and title to his vehicle along with other important paperwork. The court also awarded Mr. Tomlinson attorney's fees and ordered that Ms. King have no further contact with Mr. Tomlinson. In April 2019, Ms. King filed a petition to set aside the default judgment for lack of proper service of process. She also requested the court to enter a restraining order preventing Mr. Tomlinson from clouding or encumbering title to the real property, to grant Ms. King attorney's fees, and to enter an order declaring that Ms. King is the lawful owner of the remainder interest in the property. In August 2019, the trial court entered an order vacating its previous order and restraining both parties from encumbering or clouding the title to the real property. The remaining issues were reserved pending a final hearing. Ms. King filed an answer in December 2019. She admitted to calling Mr. Tomlinson and visiting him one or more times a month or every other month, but she otherwise denied the factual allegations of the complaint. Additionally, she requested that the court dismiss the complaint and award her attorney's fees.

The trial court held a hearing on the complaint in December 2019, wherein the court heard testimony from Mr. Tomlinson. When questioned about why he filed the complaint, Mr. Tomlinson stated that Ms. King had taken advantage of him. He stated that she had done this by going to his house every week in 2016 and "play[ing] a good old lady." He explained that Ms. King had promised to help him and take care of him. Mr. Tomlinson recalled that she had requested ownership of the real property, and he now believed that she promised to take care of him only because she wanted the real property and his money. He further described that Ms. King had been with him in Tennessee "all the time" in 2016 and that he had seen her twice in 2017, but he had not seen her since that time. Concerning the deed, Mr. Tomlinson testified that he did not remember setting up the appointment with the attorney to have the deed drafted, and he did not know if he had signed the deed. Additionally, Mr. Tomlinson testified that Ms. King had taken $160,000 from his bank account and placed it in another bank, but he did not know what she was doing. Regarding

a durable power of attorney for healthcare that appointed Ms. King as his attorney-in-fact, Mr. Tomlinson stated that he did not remember signing it. Mr. Tomlinson admitted, however, that Ms. King had never taken him to see a physician or had any influence over him at appointments with the physician.

Regarding his health, Mr. Tomlinson testified that he could not walk, he had diabetes, and he was "wore out." He explained that he had "one problem after another" since he was 86 years old, as he had a knee replacement and had to stay in the nursing home for a month. He said that he had prostate cancer in 2016 for which he received medical treatment. When questioned about his competency, Mr. Tomlinson answered that in his opinion he was not competent due to his age. He also stated that he had not driven in six years.

During cross-examination, counsel for Ms. King moved to strike Mr. Tomlinson's testimony on the basis that he was incompetent to testify and was unable to remember any of the events surrounding the execution of the deed. The trial court overruled this motion. However, after cross-examination resumed, the court called for a recess. After the hearing reconvened, the court requested that Mr. Tomlinson be examined by his physician to determine whether he was competent and adjourned the hearing. Mr. Tomlinson was subsequently examined by his physician, and his physician wrote a letter stating that "[d]espite his advanced age, Mr. Tomlinson remains capable of making informed decisions regarding his affairs." After a hearing in January 2020, which Mr. Tomlinson was unable to attend, the trial court entered an order and found that due to Mr. Tomlinson's poor physical health and inability to be present for hearings, he was an unavailable witness, and thus, the use of depositions and prior testimony was permitted. Before a written order was entered, however, Mr. Tomlinson died. The trial court subsequently entered an agreed order stating that Mr. Tomlinson's estate would be substituted as a party in this action.[2]

Another hearing was held in November 2021. At this hearing, the court heard testimony from Ms. King. Ms. King testified that she was adopted and had only known her adoptive father for most of her life. However, she explained that she first discovered that Mr. Tomlinson was her biological father after her biological mother told her that her biological father's name was "Lloyd Linson." She contacted an individual from the Linson family in Missouri, and the individual told her that the family had changed its surname from Tomlinson to Linson upon relocating from Tennessee. She was able to call Mr. Tomlinson and begin a relationship with him in 1995 after she contacted a school to see if anyone knew a "Lloyd Tomlinson." She admitted, however, that there was no paternity testing that established that she was Mr. Tomlinson's biological daughter, but Mr. Tomlinson told others that she was his daughter. She explained that this relationship continued, and after Mr. Tomlinson's wife died, she began calling him "every day and

---

[2] Although the estate was substituted as the plaintiff, in order to maintain consistency and clarity, this opinion will refer to the plaintiff and appellee as Mr. Tomlinson.

every night" to check on him because he was diabetic. She further described that after Mr. Tomlinson's wife died, one of his daughters was going through a divorce, and Mr. Tomlinson was depressed and lonely. She stated that because of this situation, and because his wife had checked his blood glucose levels and administered shots for him, she felt that she needed to step in to care for him. Regarding the time she spent at Mr. Tomlinson's home, Ms. King explained she had only stayed at Mr. Tomlinson's home once, but he had stayed with her many times and once spent two-and-one-half months with her.

Concerning the execution of the deed, Ms. King recalled that Mr. Tomlinson told her that he was going to leave the land to her, and she further recalled that he had told her that he wanted to give her the real property because he loved her. She said that after he had told her this, she went back to Missouri where she resided. She said that while she was in Missouri, Mr. Tomlinson went to an attorney's office and had the attorney draft the deed. She recalled first learning about the deed around Christmas 2016 when Mr. Tomlinson called her and invited her to pick up the deed and take it back to her lockbox. She said that she did not at any time speak with Mr. Tomlinson's attorney about preparing the deed, and she did not promise Mr. Tomlinson anything in exchange for the land. When questioned about her signature on the affiant stamp on the deed that was dated September 2016, Ms. King stated that she was not sure why it listed that date. She explained that she was not present for the execution of the deed, and she claimed the register of deeds called her to come back because the register of deeds forgot to put the stamp on the deed. She admitted that she was with Mr. Tomlinson at the attorney's office to pay for the deed to be recorded. When questioned about a receipt from the register of deeds showing that she paid for the deed to be recorded in September 2016, Ms. King stated, "Maybe the whole thing had been redone because [the register of deeds] messed up with the stamp." Ms. King explained, however, that she could be confused and mistaking the date of the living will and power of attorney, which were drafted in December 2015, for the date of the execution and recording of the deed.

Ms. King also testified that Mr. Tomlinson had given her his keys and title to his car and told her to take them home to put in her lockbox. She clarified, however, that by the time of trial she had returned the title and keys to Mr. Tomlinson. Ms. King further testified that Mr. Tomlinson had repeatedly asked her to give the real property back to him, but she refused and told him that she might do it at a later date. She said that she did not return it to him later, however, because she was trying to protect him as money was disappearing from his bank account, and he had talked about selling the land but had no plans for where he would move. She explained that she was holding onto the land to try to save it for him from someone who wanted to take his money. She believed that Mr. Tomlinson was easily manipulated, and she expressed concern that individuals were taking advantage of him, which hindered her relationship with him. Ms. King characterized Mr. Tomlinson as independent throughout his life, and she explained that he never went to a nursing home. She said that Mr. Tomlinson never moved from his home and never quit taking care of his cattle.

In December 2021, the trial court entered a written order. The court found that a confidential relationship existed between Mr. Tomlinson and Ms. King and that Ms. King received a benefit from the relationship. The court further found that there was undue influence exerted over Mr. Tomlinson. Additionally, the court found that Ms. King was not a credible witness and that, contrary to her testimony, she was present for the execution of the deed. Thus, the court ordered that Ms. King be divested of her interest in the real property and that the real property was solely vested in Mr. Tomlinson's estate. The court also ordered that Mr. Tomlinson's car keys, title, and all other important paperwork be returned to his estate.

In January 2022, Ms. King filed a combined Rule 52.02 motion to amend or make additional findings of fact and Rule 59.04 motion to alter or amend judgment. In the combined motion, Ms. King submitted several proposed findings for the trial court and requested the court to make additional findings regarding the requests for temporary restraining orders and requests for attorneys' fees in the complaint and Ms. King's petition to set aside default judgment and answer. Ms. King also requested the court to issue findings regarding the credibility of the testimony of Mr. Tomlinson's physician as to the condition of Mr. Tomlinson.[3] Furthermore, Ms. King requested that the trial court set aside the judgment because Mr. Tomlinson's complaint did not contain a claim for undue influence or request in the prayer for relief a divestment of Ms. King's interest in the real property. In March 2023, the trial court entered an order rejecting all of Ms. King's proposed findings except that the proof established that Mr. Tomlinson's wife died in 2015 and not in 2016. Additionally, the court found that the issues of the temporary restraining orders were rendered moot by the court's ruling, and the court declined to awarded attorneys' fees to either party. Regarding the credibility of Mr. Tomlinson's physician, the court's order stated that the testimony of the physician was considered, but the decision was based on "the greater weight of the credible evidence." The trial court also found Ms. King's motion to alter or amend the judgment to be without merit. Ms. King subsequently appealed.

## II. ISSUES PRESENTED

Ms. King presents the following issues on appeal, which we have slightly restated:

1. Whether the trial court erred in granting relief in the form of divesting interest in title to the real property without Mr. Tomlinson pleading for the relief;

2. Whether Mr. Tomlinson presented sufficient proof to divest Ms. King's interest to title in the real property.

For the following reasons, we affirm the decision of the trial court and remand for further

---

[3] In November 2021, a deposition of Mr. Tomlinson's physician was filed in the trial court. However, the transcript of this deposition is absent from the appellate record.

proceedings consistent with this opinion.

## III. Standard of Review

This is an appeal of a trial court's decision made after a bench trial. We review factual findings *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Spearman v. Shelby Cnty. Bd. of Educ.*, 637 S.W.3d 719, 731 (Tenn. Ct. App. 2021). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *In re Est. of Ladd*, 247 S.W.3d 628, 637 (Tenn. Ct. App. 2007) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). Questions of law are reviewed *de novo* with no presumption of correctness. *In re Sidney J.*, 313 S.W.3d 772, 774 (Tenn. 2010).

## IV. Discussion

### A. Relief Not Requested in Complaint

We first consider Ms. King's issue regarding whether the trial court erred in granting relief not requested in Mr. Tomlinson's pleadings. In the prayer for relief in Mr. Tomlinson's complaint, he requested the following:

A. Proper process or notice issue and be given to or served on Defendant requiring her to answer;

B. A temporary Restraining Order or Injunction issue restraining and enjoining the Defendant from transferring, encumbering, damaging or destroying [the real property];

C. A temporary Restraining Order issue restraining Defendant from transferring title to the vehicle owned by Plaintiff, a 2010 Cadillac;

D. Plaintiff be awarded his attorneys fees in this matter and all costs associated herewith;

E. Plaintiff be awarded such other, further, and general relief to which he shows himself entitled[.]

Ms. King contends that because Mr. Tomlinson did not make a demand for Ms. King to be divested of her interest in the real property, the court improperly awarded such relief in its order.

"It is well settled that 'a judgment is void where it is rendered wholly outside of the pleadings, and no binding consent thereto is shown in the record.'" *Estate of Hargett v. Brown*, No. M2022-00250-COA-R3-CV, 2023 WL 3916273, at *10 (Tenn. Ct. App. June 9, 2023) (quoting *In re John B.*, No. M2019-02022-COA-R3-JV, 2020 WL 6075704, at *4 (Tenn. Ct. App. Oct. 15, 2020)). Moreover, "since the purpose of pleadings is to give notice to all concerned regarding what may be adjudicated, a judgment beyond the scope of the pleadings is beyond the notice given the parties and thus should not be enforced." *Elec. Controls v. Ponderosa Fibres of Am.*, 19 S.W.3d 222, 227 (Tenn. Ct. App. 1999) (quoting *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955)). However, Tennessee Rule of Civil Procedure 54.03 provides, in part:

> Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings; but the court shall not give the successful party relief, though such party may be entitled to it, where the propriety of such relief was not litigated and the opposing party had no opportunity to assert defenses to such relief.

Accordingly, "our courts have the authority to grant appropriate relief to a prevailing party even if that relief was not demanded in the pleadings if the issue was tried by consent."[4]

---

[4] Mr. Tomlinson argues that the relief granted by the trial court was proper because "there was a prayer for general relief and obviously the [t]rial [c]ourt saw fit to restore the property to [Mr. Tomlinson]." "The rule is well settled in this state that under a prayer for general relief the court may grant any other and different relief from that specifically indicated and prayed for which is justified by the pleadings and the proof." *Mid-South Indus., Inc. v. Martin Mach. & Tool, Inc.*, 342 S.W.3d 19, 32 (Tenn. Ct. App. 2010) (quoting *Connecticut Indem. Co. v. DeGalleford*, 470 S.W.2d 5, 7 (Tenn. 1971)). However, the relief a court may grant under a prayer for general relief is subject to several limitations. *See Connecticut Indem. Co.*, 470 S.W.2d at 7. For instance, "[t]he relief granted must be clearly within the scope of the bill, and it must not be either antagonistic to, or altogether different from, that specifically prayed for." *Id.* Likewise, "the bill must not be so vague that the defendant may be surprised by a case that he could not be prepared to meet[.]" *Id.* at 8 (quoting *Caldwell v. Huffstutter*, 116 S.W.2d 1017, 1019 (Tenn. 1938)). Because under Tennessee Rule of Civil Procedure 54.03 a court may grant relief that a party is entitled to even if the relief was not specifically demanded in the complaint, this Court has analyzed whether a particular relief granted by the trial court was proper under Rule 54.03 even when the complaint did contain a prayer for general relief. *See Rivkin v. Postal*, No. M1999-01947-COA-R3-CV, 2001 WL 1077952, at *13 (Tenn. Ct. App. Sept. 14, 2001) (citing Tenn. R. Civ. P. 54.03; *Aaron v. Aaron*, 909 S.W.2d 408, 412 (Tenn. 1995)) ("The complaint did contain a prayer for general relief, and courts may properly grant whatever relief a prevailing party has proved that it is entitled to."); *see also* Lawrence A. Pivnick, 1 Tennessee Circuit Court Practice § 7:9 (2023) ("It is a common practice in Tennessee to include a demand for general relief. This is superfluous as the Rules provide that . . . every final judgment must grant the relief to which a party in whose favor it is rendered is entitled."). Thus, in *Rivkin*, even when the complaint contained a prayer for general relief, we considered whether the relief not specifically demanded in the complaint was tried by consent. *Rivkin*, 2001 WL 1077952, at *13. We do the same here.

*Renken v. Renken*, No. M2017-00861-COA-R3-CV, 2019 WL 719179, at \*4 (Tenn. Ct. App. Feb. 20, 2019) (citing Tenn. R. Civ. P. 54.03). "When issues not raised by the pleadings are tried by consent, 'they shall be treated in all respects as if they had been raised in the pleadings.'" *Id.* (quoting Tenn. R. Civ. P. 15.02). However, "[t]rial by implied consent is not shown by the presentation of evidence that is relevant to an unestablished issue when that evidence is also relevant to the established issue." *McLemore v. Powell*, 968 S.W.2d 799, 803 (Tenn. Ct. App. 1997) (citing *Hiller v. Hailey*, 915 S.W.2d 800, 805 (Tenn. Ct. App. 1995)).

After reviewing the record, we conclude that the issue of whether the deed granting a remainder interest to Ms. King should be set aside and Ms. King be divested of her interest in the real property was tried by implied consent. Although in his complaint, Mr. Tomlinson failed to request relief in the form of divesting Ms. King of her interest in the property, it is clear that Ms. King was on notice that Mr. Tomlinson was seeking such relief. At trial, the following interaction took place between Mr. Tomlinson's counsel and him:

Q. This warranty deed that gives the property to Ms. [King] with you having a lifetime right there, is that what you're fighting[;] to get your land back?

A. Yeah, right . . .

. . .

Q. Have you asked her for your property back?

A. I've asked her. You know, she got my title to my car and my car keys, and I paid for my funeral. She got all that stuff and would never give none of it back to me.

Q. Is that why you filed this lawsuit?

A. Yeah.

Q. And what do you want this Court to do?

A. Well, I'd love to have my property free. You know, if I was to go in the nursing home, which I will, they - - they deserve it, you know.

Q. You want it back in your name?

A. Right.

- 8 -

. . .

Q. Are you asking for any other relief from this court?

A. No. I just – just to get rid of her and all my stuff – my land back. That's the main thing.

Additionally, both parties presented ample proof on the execution of the deed and whether Ms. King had unduly influenced Mr. Tomlinson to execute the deed. Counsel for Ms. King did not object to this testimony during trial on the basis that the relief was not requested in the pleadings. This Court has previously held that a trial court did not err in granting relief not requested in the pleadings when, among other things, one of the parties testified that the particular relief should be granted and significant testimony was directed to the issue. *See Renken*, 2019 WL 719179, at *4 (concluding that the issue of whether the mother should have an increase in parenting time, though not requested in the mother's counter-petition, was tried by consent when the mother testified that the current plan should be modified, the guardian ad litem recommended equal parenting time, and the father expressed his view that the mother was not entitled to increased parenting time). Ms. King did not make any argument that such relief was not requested in the pleadings until her motion to alter or amend the judgment, which she filed after the trial court entered the order divesting Ms. King of her interest in the real property. *See Jones v. Jones*, No. 01A01-9806-CV-00298, 1999 WL 248735, at *3 (Tenn. Ct. App. Apr. 29, 1999) (concluding that although the husband raised the issue in a Rule 59.04 motion after judgment was entered that the trial court erred in awarding the wife marital property in a divorce action when it was not requested in the pleadings, the issue was tried by consent because he did not raise an objection during oral arguments, during the parties' testimony, or at the conclusion of the trial). Therefore, because the issue of whether the real property should be returned to Mr. Tomlinson was litigated by the parties at trial, we cannot agree with Ms. King's assertion that the court erred in granting this relief when it was not explicitly requested in the pleadings.

### B. Undue Influence

We now consider Ms. King's second issue concerning whether there was sufficient proof to divest her interest in the real property by a claim of undue influence. "Undue influence can occur when a confidential relationship places one party in the capacity to exert control over the mind and will of another person." *In re Est. of Lipscomb*, No. W2018-01935-COA-R3-CV, 2020 WL 1549596, at *8 (Tenn. Ct. App. Apr. 1, 2020) (citing *Fritts v. Abbott*, 938 S.W.2d 420 (Tenn. Ct. App. 1996)). "The dominant rule in Tennessee and elsewhere is that the existence of a confidential relationship, followed by a transaction wherein the dominant party receives a benefit from the other party," gives rise to a presumption of undue influence that "may be rebutted only by clear and convincing evidence of the fairness of the transaction." *Matlock v. Simpson*, 902 S.W.2d 384, 386

(Tenn. 1995). Stated differently, once a confidential relationship has been shown to exist, the burden shifts to the dominant party to rebut the presumption of undue influence by proving the fairness of the transaction by clear and convincing evidence. *Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002). In Mr. Tomlinson's complaint, he alleged that he had a confidential relationship with Ms. King.[5] The trial court ultimately found that a confidential relationship between Mr. Tomlinson and Ms. King existed and that Ms. King received a benefit from the confidential relationship.

Whether a confidential relationship exists is a question of fact. *Matlock*, 902 S.W.2d at 385-86. "A confidential relationship exists 'where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with ability, because of that confidence, to influence and exercise dominion and control over the weaker or dominated party.'" *Floyd v. Akins*, 553 S.W.3d 469, 476 (Tenn. Ct. App. 2017) (quoting *Kelley v. Johns*, 96 S.W.3d 189, 196 (Tenn. Ct. App. 2002)). There are two broad categories of confidential relationships: "(1) 'legal confidential relationships,' where the law imposes fiduciary duties on the dominant party; and (2) 'family and other relationships.'" *Jarnigan v. Moyers*, 568 S.W.3d 585, 591 (Tenn. Ct. App. 2018) (citing *Matlock*, 902 S.W.2d at 385-86). Family and other relationships are only confidential relationships "when one party exercises dominion and control over the other party." *Id.* This Court has previously explained the following concerning confidential relationships among family members:

> In other cases adjudicated by this Court wherein we have affirmed the trial court's finding of the existence of a confidential relationship between the decedent and a family member, certain factual similarities exist. Those similarities include (1) the decedent's declining physical or mental health; (2) the decedent's resulting dependency on the family member; and (3) the family member's ability to exercise control over the decedent's financial affairs, acceptance of visitors, healthcare decisions, or other important actions.

---

[5] On appeal, Mr. Tomlinson argues that there was a confidential relationship by virtue of the durable power of attorney for health care executed in December 2015. The durable power of attorney for health care granted to Ms. King "full authority to make health care decisions for [Mr. Tomlinson]." "A confidential relationship arises—through a fiduciary relationship—between a principal and attorney-in-fact to a power of attorney when the power of attorney has been exercised and the attorney-in-fact was active in its procurement." *Waller v. Evans*, No. M2008-00312-COA-R3-CV, 2009 WL 723519, at *8 (Tenn. Ct. App. Mar. 17, 2009); *see Childress*, 74 S.W.3d at 329 ("When an unrestricted power of attorney is executed but has not yet been exercised, good sense dictates that there exists no dominion and control and therefore no confidential relationship based solely on the existence of the power of attorney."). Here, there is no indication in the record that the durable power of attorney for healthcare was exercised. Mr. Tomlinson testified that Ms. King never took him to the doctor, was never present for any medical appointments, and never had any influence over him at the doctor. Therefore, we cannot agree with Mr. Tomlinson's assertion that a confidential relationship existed by virtue of the durable power of attorney for health care.

*In re Est. of Chaney*, No. E2022-01051-COA-R3-CV, 2023 WL 6301763, at *10 (Tenn. Ct. App. Sept. 28, 2023).

In the present case, the record reflects that when the deed was executed, Mr. Tomlinson was an elderly man in poor physical condition with multiple health issues. Although Mr. Tomlinson's physician stated in 2019 that he remained capable of making informed decisions, Ms. King testified that after Mr. Tomlinson's wife died in 2015, he was depressed and lonely. Furthermore, although Ms. King stated that Mr. Tomlinson remained independent all his life, she explained that she decided to "step in there and try to help him" after his wife died because his wife had always helped him with his shots and monitoring his blood glucose levels. She also described him as easily manipulated. Mr. Tomlinson testified that Ms. King offered to take care of him, but once the property was transferred, he did not see her for almost two years. Ms. King's help in providing care to Mr. Tomlinson for his health issues and his reliance on her promise to take care of him reveal that he was dependent on her and had placed confidence in her. It was in this context that Ms. King exercised dominion and control over Mr. Tomlinson's finances. Mr. Tomlinson testified that without his knowledge Ms. King had taken $160,000 of his money and deposited it into another bank. Therefore, the evidence does not preponderate against the trial court's finding that there was a confidential relationship between Mr. Tomlinson and Ms. King. Ms. King was the dominant party in the confidential relationship and clearly received a benefit in the form of a remainder interest in the real property. Thus, a presumption of undue influence arose, and Ms. King must establish that the transaction was fair by clear and convincing evidence. *See Parish v. Kemp*, 179 S.W.3d 524, 531 (Tenn. Ct. App. 2005).

"Determining whether undue influence has occurred is a question of fact." *Jarnigan*, 568 S.W.3d at 591. Thus, we must affirm the trial court's finding of undue influence unless the evidence preponderates otherwise. *Id.*; *see* Tenn. R. App. P. 13(d). "Because direct evidence of undue influence is rarely available, undue influence can be established by showing 'suspicious circumstances' leading to a conclusion that the allegedly influenced person did not act freely and independently." *Ellis v. Duggan*, 644 S.W.3d 85, 115 (Tenn. Ct. App. 2021) (citing *Jarnigan*, 568 S.W.3d at 591). However, "a presumption of undue influence can be rebutted by showing a lack of suspicious circumstances." *Id.* (citing *In re Est. of Lipscomb*, 2020 WL 1549596, at *10).

Most of the caselaw regarding "suspicious circumstances" involves will contests. However, we have found these circumstances to be "generally applicable to a claim of undue influence in another context[.]" *Lewis v. Lewis*, No. E2014-00105-COA-R3-CV, 2015 WL 1894267, at *8 (Tenn. Ct. App. Apr. 27, 2015). Commonly recognized suspicious circumstances are:

(1) a confidential relationship between the testator and the beneficiary; (2)

the testator's poor physical or mental condition; (3) the beneficiary's involvement in the procurement of the will in question; (4) secrecy concerning the will's existence; (5) the testator's illiteracy or blindness; (6) the unjust or unnatural nature of the will's terms; (7) the testator being in an emotionally distraught state; (8) discrepancies between the will and the testator's expressed intentions; and (9) fraud or duress directed toward the testator.

*Floyd*, 553 S.W.3d at 476 (quoting *Estate of Hamilton v. Morris*, 67 S.W.3d 786, 792-93 (Tenn. Ct. App. 2001)). Further, this Court has specifically "extended the applications of these factors to set aside a deed on the basis of undue influence." *Id.* "The scope of evidence regarding fairness is quite broad, and there is no mathematical formula for determining the number or type of suspicious circumstances that will support a finding of undue influence." *Ellis*, 644 S.W.3d at 115 (quoting *In re Est. of Lipscomb*, 2020 WL 1549596, at *10-11).

Here, Ms. King argues that Mr. Tomlinson failed to prove the existence of suspicious circumstances. In her appellate brief, Ms. King points to four facts to support her argument. First, Mr. Tomlinson denied any knowledge of the power of attorney for healthcare and testified that Ms. King never took him to the doctor, was never present for medical appointments, and never had any influence over him at the doctor. Second, Mr. Tomlinson was examined by his medical doctor and determined capable of making informed decisions. Third, there was no secrecy in the execution of the deed, the deed was recorded with the register's office, and the transfer tax was paid. Fourth, the consideration of the deed was for the sum of one dollar cash in hand and the love and affection that Mr. Tomlinson had for Ms. King. Although Ms. King is correct in her assertion of these facts, we do not find that the evidence provided by Ms. King is sufficient to rebut the presumption of undue influence by clear and convincing evidence.

In addition to the confidential relationship between Mr. Tomlinson and Ms. King, we also find that there were other suspicious circumstances. As previously discussed, Mr. Tomlinson was in poor physical condition as he suffered from many health problems, including diabetes and cancer. Furthermore, following the death of Mr. Tomlinson's wife, he had a poor mental condition in that he was depressed and lonely. Therefore, the "declining physical or mental health" of Mr. Tomlinson was a suspicious circumstance supporting a finding of undue influence. *See Floyd,* 553 S.W.3d at 477.

Suspicious circumstances can also include "the beneficiary's involvement in procuring the transaction in question." *Id.* Concerning Ms. King's involvement in the execution of the deed, the trial court found that Ms. King was present for the execution of the deed, signed the affiant stamp, and paid to have the deed recorded. In making this finding, the trial court did not find Ms. King to be a credible witness and rejected her testimony that she was not present for the execution of the deed. We give "great weight to

- 12 -

a trial court's findings that are predicated upon a determination of credibility." *King v. Anderson Cnty.*, 419 S.W.3d 232, 246 (Tenn. 2013). For this reason, "[a]ppellate courts will not second-guess a trial court's credibility determinations without 'clear and convincing evidence to the contrary.'" *Id.* (quoting *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 515 (Tenn. 2012)). The record does not contain any clear and convincing evidence to support Ms. King's contention that she was not present for the execution of the deed and that she signed the affiant stamp months later. Accordingly, we will not reevaluate the trial court's finding that Ms. King was present for the execution of the deed. Thus, Ms. King's involvement was a suspicious circumstance supporting a finding of undue influence.

In summary, we cannot agree with Ms. King's argument that Mr. Tomlinson failed to prove the existence of suspicious circumstances. Accordingly, we conclude that the trial court did not err in finding that Ms. King exerted undue influence over Mr. Tomlinson in the execution of the deed. We further conclude that the trial court did not err in setting aside the deed to the real property and divesting Ms. King of her remainder interest in the real property on the basis of undue influence.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to the appellant, Melissa Malone King, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE